### JORDAN v. UNITED STATES.
### No. 11682.

United States Court of Appeals, District of Columbia Circuit.

Argued May 19, 1953.

Decided July 30, 1953.

Mr. James J. Laughlin, Washington, D. C., with whom Mr. Albert J. Ahern, Jr., Washington, D. C., was on the brief, for appellant.

Mr. E. Riley Casey, Asst. U. S. Atty., Washington, D. C., with whom Messrs. Leo A. Rover, U. S. Atty., and Thomas A. Flannery, Asst. U. S. Atty., and William R. Glendon, Asst. U. S. Atty., Washington, D. C., at the time of argument, were on the brief, for appellee.

Mr. Charles M. Irelan, U. S. Atty., Washington, D. C., at the time the record was filed, also entered an appearance for appellee.

Before CLARK, WILBUR K. MILLER and WASHINGTON, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

For many years the procedure to be followed by the United States District Court for the District of Columbia in determining an accused person's mental competence to stand trial was prescribed by a statute originally enacted March 3, 1901, 31 Stat. 1340, ch. 854, § 927, which, as amended April 14, 1906, 34 Stat. 113, ch. 1624, and July 2, 1945, 59 Stat. 311, ch. 217, appears as § 24–301 in the 1951 edition of the District of Columbia Code.[1] There was no statutory procedure, however, to be followed by the other federal courts of the nation in determining such a question until Congress enacted on September 7, 1949, what is now 18 U.S.C. § 4244, 63 Stat. 686, ch. 535, § 1, which deals with inquiry into the mental competency of "a person charged with an offense against the United States". The principal difference between the local statute and the later legislation which has general application is that the former at least permits and perhaps requires a jury trial as to a defendant's sanity, while the latter commits to the district judge the task of ascertaining whether an accused person is insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense.

This appeal presents the question whether the provision of the District Code to which we have referred was re-

1. Section 24–301 is in pertinent part as follows:

"* * * whenever a person is indicted or is charged by an information for an offense, or is charged in the juvenile court of the District of Columbia with an offense, and before trial or after a verdict of guilty, it shall appear to the court, from prima facie evidence submitted to the court or from the evidence adduced at the trial, that the accused is then of unsound mind, the court may order the accused committed to the Gallinger Municipal Hospital for a period not exceeding thirty days, which period may be extended by the court for good cause shown, for examination and observation by the psychiatric staff of said hospital. If, after examination and observation, the said psychiatric staff shall report that in their opinion the accused is insane, the court may cause a jury to be impaneled from the jurors then in attendance on the court or, if the regular jurors have been discharged, may cause a sufficient number of jurors to be drawn to inquire into the sanity of the accused, and said inquiry shall be conducted in the presence and under the direction of the court. If the jury shall find the accused to be then insane, or if an accused person shall be acquitted by the jury solely on the ground of insanity, the court may certify the fact to the Federal Security Administrator, who may order such person to be confined in the hospital for the insane, and said person and his estate shall be charged with the expense of his support in the said hospital. The person whose sanity is in question shall be entitled to his bill of exceptions and an appeal as in other cases."

pealed by implication through the enactment of the general statute.[2]

The appellant, George T. Jordan, has never been tried under an indictment returned June 12, 1944, which accused him of first degree murder. Other criminal charges against Jordan have been pending, undetermined, for several years. This condition is due partly to the fact that the government elected to try him under another indictment returned June 12, 1944, which charged him with a robbery unrelated to the murder charge and the other accusations;[3] but largely the long-continued pendency of the undetermined charges, including the murder indictment, is due to several judicial determinations that the unfortunate defendant lacks mental competence to stand trial.

Early in October, 1945, while Jordan was serving the robbery sentence, the United States Attorney filed a petition for a lunacy inquiry supported by statements of the senior medical officer of St. Elizabeths Hospital and a private psychiatrist that he was suffering from paranoid psychosis. In a proceeding pursuant thereto a jury found him to be of unsound mind. He was committed to St. Elizabeths on October 22, 1945, and remained there until the superintendent of the hospital certified to the District Court on June 19, 1947, that he was of sound mind and had been discharged.

The United States Attorney filed on October 7, 1947, a second petition for a lunacy inquiry. Jordan was found by a jury to be of unsound mind and on October 14, 1947, was again committed to St. Elizabeths Hospital. The District Court file indicates that in January, 1949, he was transferred to the United States Medical Center for Federal Prisoners at Springfield, Missouri, where he seems to have remained until he was readmitted to St. Elizabeths on August 19, 1952. The superintendent of the hospital released Jordan September 22, 1952, certifying that he had recovered his reason and was then of sound mind.

The Chief Judge of the District Court entered an order in the murder case on November 4, 1952, directing that Jordan be examined by two psychiatrists, pursuant to 18 U.S.C. § 4244. But on December 19, 1952, the Chief Judge ordered that a jury be empaneled to pass upon Jordan's mental condition in accordance with § 24–301, D.C.Code (1951), whereupon a jury was immediately called and sworn to inquire into his sanity. Jordan was present and was represented by two attorneys, apparently appointed. The order of that date, after reciting the swearing of the jury, ends thus: "Thereupon at the request of the defendant the jury is discharged and the case is passed. The defendant is remanded to the District Jail."

The next step disclosed in the record is described in the following order:

"This cause having come on for hearing pursuant to Section 4244, Title 18, United States Code, and evidence having been adduced in open court, the Court finds that the defendant, George T. Jordan, is presently insane and so mentally incompetent as to be unable to understand the proceedings against him, or properly to assist in his own defense, it is by the Court, this *14th* day of January, 1953,

"Ordered, that the defendant, George T. Jordan, be committed to

2. The government contends that our decision in Perry v. United States, 1952, 90 U.S.App.D.C. 186, 195 F.2d 37, is dispositive of this appeal. In the Perry case we assumed the local applicability of the federal Code section; but the D.C.Code provision was not called to the court's attention, and the question as to which of the two apparently conflicting sections should prevail was not presented, considered, or decided.

3. He was convicted under the robbery indictment and on December 11, 1944, was sentenced to imprisonment for a term of not less than 4 nor more than 12 years. The fact that he was confined under that sentence did not destroy his right to a speedy trial under other pending indictments provided he was not mentally incompetent to stand trial.

the custody of the Attorney General or his authorized representative until he is mentally competent to stand trial, or until the pending charges against him are disposed of according to law."

Jordan appeals from the foregoing order alleging the District Court erred in proceeding under 18 U.S.C. § 4244 and in refusing to grant a trial by jury as to his mental capacity under § 24–301, D.C.Code (1951). The appellant's contention assumes that a jury is required in a lunacy inquisition conducted under that section.

His assumption finds some support in two decisions of this court to which we shall presently refer. Apparently contrary, however, to appellant's assumption is the provision of § 301 that "the court may cause a jury to be impaneled," if that expression be isolated from its context. But the section as a whole indicates that the discretion committed to the trial judge is as to whether an inquest should be conducted.

In Gonzales v. United States, 1913, 40 App.D.C. 450, the court had under consideration a forerunner of the present § 24–301 of the District Code, which in part provided that

" * * * whenever a person is indicted or is charged by an information for an offense, and before trial or after a verdict of guilty, prima facie evidence is submitted to the court that the accused is then insane, the court may cause a jury to be impaneled from the jurors then in attendance on the court or, if the regular jurors have been discharged, may cause a sufficient number of jurors to be drawn to inquire into the insanity of the accused, and said inquiry shall be conducted in the presence and under the direction of the court."

The court said, 40 App.D.C. at page 456:

" * * * Whether a prima facie case has been made by the petitioner requiring submission of the issue to a jury is a question submitted to the sound discretion of the trial judge. If it were not so, if the court be compelled to grant an inquiry by jury as an absolute right of the convict upon any showing, a practice would be instituted productive of delay, and otherwise inconsistent with the due administration of justice. Every convict might avail himself of the right, repeating petitions interminably. The matter is wisely left to the sound discretion of the trial judge. Having conducted the trial through its various stages, he has had the opportunity to observe the accused, and he is ordinarily acquainted with the witnesses whose affidavits are produced in support of the petition. If a real doubt be raised as to the sanity of the petitioner, it may be presumed that the judge will give him the desired hearing by a jury. As in respect of other matters within the discretion of a trial court, its exercise will not lightly be disturbed."

The foregoing excerpt from the Gonzales opinion was quoted with approval in Jackson v. United States, 1928, 58 App. D.C. 125, 127, 25 F.2d 549, 551.

Whether the District Code provision requires the intervention of a jury in a lunacy inquest thereunder, once it has been decided that such an inquiry should be conducted, we need not decide. For if a jury trial is not required, there is no substantial conflict between the sections of the two Codes and the appellant could no more demand a jury trial under the local statute than under the federal. On the other hand, if the District Code section requires a jury, it has been superseded in that respect by the later statute, 18 U.S.C. § 4244, which does not require one and which by its terms has general application in federal courts throughout the nation. Moreover, as the trial judge pointed out,[4] the legislative history of the federal Code provision shows it was intended to provide uniform procedure in federal courts. The local statute and the

4. United States v. Jordan, D.C.1953, 109 F.Supp. 528.

general act are on the same subject and if the former be construed as requiring a jury trial, they cannot be read together so as to give effect to both. It follows that if the local legislation makes a jury mandatory, it was through implication repealed *pro tanto* by the enactment of the federal Code provision. Consequently the District Court did not err in proceeding under the later statute without the intervention of a jury.

It is regrettable that the murder indictment and other charges are undetermined after so long a period, but the fact that this hapless defendant has not been brought to trial is due, not to "the law's delay," but to its humane concern that an accused should not be tried as long as he lacks the mentality to understand the proceedings and to aid in the conduct of his defense.

Affirmed.

WASHINGTON, Circuit Judge, concurs in the result.