226 F.2d 346
 96 U.S.App.D.C. 388
 John D. MYERS, Appellant,
v.
John B. HOLLISTER, Director, International Cooperation
Administration, Philip M. Young, Chairman, and George M.
Moore and Frederick J. Lawton, Commissioners, United States
Civil Service Commission, Appellees.
 No. 12420.
 United States Court of Appeals District of Columbia Circuit.
 Argued April 26, 1955.
Decided Sept. 1, 1955.
 
 [96 U.S.App.D.C. 389] Mr. Charles F. O'Neall, Washington, D.C., with whom Mr. Robert B. Lagather, Arlington, va., was on the brief, for appellant.
 Mr. Harold H. Greene, Asst. U.S. Atty., with whom Messrs. Leo A. Rover, U.S. Atty., Lewis Carroll and William F. Becker, Asst. U.S. Attys., were on the brief, for appellees.
 Mr. John S. Mears, Washington, D.C., filed a brief on behalf of The American Legion, as amicus curiae, urging reversal.
 Before PRETTYMAN, WASHINGTON and DANAHER, Circuit Judges.
 WASHINGTON, Circuit Judge.
 
 
 1
 This case involves the construction of the so-called MSA proviso contained in Section 7(f) of the Mutual Security Act of 1952, 22 U.S.C.A. § 1655(d). The proviso is to the effect that ninety days after the enactment of the Mutual Security Act of 1952 the personnel administering the Act, with certain exceptions not material here, shall be in the aggregate at least five per cent less than the number on June 1, 1952: 'Provided further, That after the Director (of Mutual Security) has determined the reduction to be effected in each agency, the determination as to which individual employees shall be retained shall be made by the head of the agency concerned.'
 
 
 2
 Plaintiff-appellant was a veteran preference eligible, in the classified competitive civil service, employed by the Mutual Security Agency. He was discharged on September 17, 1952, during the ninety-day period mentioned in the MSA proviso, without regard to the reduction in force procedures prescribed by the Civil Service Commission pursuant to the Veterans' Preference Act, 5 U.S.C.A. §§ 861, 863. His appeal to the Civil Service Commission was dismissed on the ground that under the MSA proviso his discharge was within the discretionary authority of the head of the employing agency. Plaintiff-appellant then filed this suit in the District Court. He asked that his discharge be set aside and that he be restored to his position. The District Court dismissed the complaint on the basis of the MSA proviso. This appeal followed.
 
 
 3
 In this court appellant urges that repeals by implication are not favored by the law,[1] that the MSA proviso and the Veterans' Preference Act are not incompatible, and that, since the MSA proviso is unambiguous, no regard can be had to its legislative history in order to determine its meaning. That meaning, according to appellant, appears plainly on its face to be that the Director of Mutual Security shall determine the reduction to be effected in each agency, and that the head of the agency shall carry out a reduction in force program; but in carrying out that program, he is bound to observe the requirements imposed by the Veterans' Preference Act and the rules promulgated under it.
 
 
 4
 The MSA proviso says that 'The determination as to which individual employees shall be retained shall be made by the head of the agency concerned.' That statement is quite inconsistent with the result which would have obtained if it had been omitted from the proviso. The regulations of the Civil Service Commission on the subject of reduction in force are extremely complex, and are evidently designed to repose a minimum of power and discretion in agency heads in the administration of reduction in force programs. Most emphatically those regulations do not provide that 'the determination as to which individual employees shall be retained shall be made by the head of the agency concerned.' It is fair to say that they provide, in substance, exactly the contrary. See 5 C.F.R. Part 20. Yet appellant argues that [96 U.S.App.D.C. 390] the head of each agency already had power to determine which employees were to be retained in any reduction in force program-- subject always to the limitations of the Veterans' Preference Act and regulations thereunder. This argument, of course, is unconvincing. If it were well founded, it would reduce the proviso to mere surplusage. But it appears to us to be entirely unfounded, for the reasons just suggested.
 
 
 5
 In a doubtful case the courts should, of course, make every effort to reconcile two allegedly conflicting statutes and give effect to the language and intent of both so far as may be. United States v. Borden Co., 1939, 308 U.S. 188, 198, 60 S.Ct. 182, 84 L.Ed. 181. But this process cannot be carried to such length as to deprive one or the other of the statutes of its essential meaning.[2] We think that is appellant's effort here: to deprive the disputed words of any real significance. Before a court accepts that course, it is certainly entitled to seek out-- and we think it should seek out-- the purpose of the legislation through such extrinsic aids as may be available. See United States v. American Trucking Associations, 1940, 310 U.S. 534, 544, 60 S.Ct. 1059, 1064, 84 L.Ed. 1345, where the Court repudiated the 'literal interpretation dogma which withholds from the courts available information for reaching a correct conclusion.' See also Harrison v. Northern Trust Co., 1943, 317 U.S. 476, 479, 63 S.Ct. 361, 87 L.Ed. 407.
 
 
 6
 Looking, therefore, at the legislative history of the MSA proviso, we find this: The proviso was drafted by the House Committee on Foreign Relations. That Committee, in its report on the bill which became the Mutual Security Act of 1952, said in explanation of the statutory text:
 
 
 7
 'The Mutual Security Act of 1951 reduced the personnel of the Mutual Security Agency by 10 percent. But the MSA is only one of several agencies engaged in carrying out the act. The State Department, the Defense Department, the TCA also come within the scope of its provisions. Hence the committee gave close scrutiny to all the personnel engaged in the administration of the law. It interrogated witnesses and sought the advice of the executive branch on a reduction in numbers. Those paid from local currency are aliens. The local currency constitutes no charge against the United States. Personnel paid from program funds are numerically the largest. To effect a reduction in their numbers, however, appeared to work undue hardship on the programs. They include such diverse groups as technicians working on Point IV programs and ungraded civilian workers employed in arsenals and Government yards. Many of the latter group are on a daily or hourly pay basis. In the case of technicians a cut-off date would place a heavy burden on TCA. Its personnel strength is still far short of the targets that the Congress has approved.
 
 
 8
 'The Committee has recommended a 10 percent reduction in military personnel and those paid from administrative funds, with certain exceptions. It is estimated that this provision will result in a reduction of over 1,000 people.
 
 
 9
 'Unless care were taken in writing this amendment, the last employed would be the first discharged. This was not the primary objective of the amendment. The committee was desirous of eliminating the drones. It therefore gave careful attention to the language of the proviso. In order that the reduction may be carried out without any loss [96 U.S.App.D.C. 391] of effectiveness the Director for Mutual Security is to distribute the cut among the various agencies. The head of each agency is thereafter to determine in his own discretion which employees he will retain as most capable of carrying out the program, without regard to existing statutes, regulations and procedures for reduction in force.'[3]
 
 
 10
 From this history we must conclude that the proviso was intended-- in the limited number of cases to which it had application-- to give agency heads broad discretionary power to discharge employees, 'without regard to existing statutes, regulations and procedures for reduction in force'. We further conclude that in the matter of reductions in force in Federal agencies, contrary to what appellant argues, the Veterans' Preference Act occupies the position of a general law and the MSA proviso that of a special law, applying only to one particular reduction in force in one specified agency and not impairing or affecting in any way the rules applicable to reductions in force in other agencies or even in MSA beyond the five per cent reduction in force ordered by Congress in the Mutual Security Act of 1952. As such, the proviso must prevail. MacEvoy Co. v. United States, 1944, 322 U.S. 102, 64 S.Ct. 890, 88 L.Ed. 1163; Shelton v. United States, 1947, 83 U.S.App.D.C. 32, 165 F.2d 241.
 
 
 11
 For these reasons, the judgment of the District Court dismissing the complaint must be
 
 
 12
 Affirmed.
 
 
 13
 PRETTYMAN, Circuit Judge (dissenting).
 
 
 14
 I would reverse in this case. The disputed provision in the Mutual Security Act is that 'the determination as to which individual employees shall be retained shall be made by the head of the agency concerned.' I think that provision contemplates a determination by the agency head in accordance with law. It does not repeal existing law on the methods to be pursued in reductions in force, and it does not by the remotest suggestion create an exception to all such existing law. It does not release the agency head from the otherwise valid restrictions imposed by the President, the Congress, or both together.
 
 
 15
 It is a familiar rule that repeal by implication is found only by reason of necessity. No necessity exists here; the provision can be read with complete sense in conjunction with existing law. If, for example, a statute on some subject should contain a provision that determinations in disputes arising thereunder should be made by a District Court, that provision would not repeal or create an exception to the Rules of Civil Procedure, 28 U.S.C.A., or to any established principles governing adjudications. Such a statutory provision is merely a designation of the agency to which authority is confided; it is not a prescription of standards or procedure.
 
 
 16
 Sentences in the Mutual Security Act preceding the quoted provision refer repeatedly to functions to be performed by the Director for Mutual Security. I read the disputed proviso as merely a careful insurance by the draftsman against the idea that the Director should pick the personnel to be released. The simple meaning of the statute, as I read it, is that the Director shall do so-and-so but that when it comes to picking the personnel for release the head of the agency shall do the job. Maybe, as my brethren suggest, the proviso in issue here was unnecessary to accomplish the meaning I attribute to it. But surely it serves the purpose of a precautionary clause and [96 U.S.App.D.C. 392] marks the boundaries of the Director's duties in carrying out the ordered reduction in force. Although it may have been unnecessary for the purpose of giving agency heads power to choose the personnel for release, it serves to avoid any suggestion that the agency heads no longer have that power. In that sense the proviso is not 'mere surplusage' under my construction; it was the result of careful drafting. Many statutes contain precautionary clauses which are good draftsmanship although unnecessary. A prime example is the Bill of Rights, the first Eight Amendments.
 
 
 17
 Moreover I think Congress did not mean by this enactment to repeal for these purposes all preferential rights of veterans. I would be surprised, even shocked, if it were shown that Congress had that intent in such an innocent looking statutory clause. The whole congressional history in this field is contrary to such an intent.
 
 
 
 [1]
 Citing General Motors Acceptance Corp. v. United States, 1932, 286 U.S. 49, 61-62 52 S.Ct. 468, 76 L.Ed. 971; Sims v. Rives, 1936, 66 App.D.C. 24, 84 F.2d 871. The proposition, as a generality, is no doubt correct. Compare Jordan v. United States, 1953, 93 U.S.App.D.C. 65, 207 F.2d 28, and cases cited infra in the present opinion
 
 
 [2]
 See United States v. Jordan, D.C.D.C., 109 F.Supp. 528, affirmed 1953, 93 U.S.App.D.C. 65, 207 F.2d 28; Smith v. Day & Zimmerman, D.C.S.D.Iowa, 1946, 65 F.Supp. 209; Arenas v. United States, D.C.S.D.Cal., 1945, 60 F.Supp. 411, 425, affirmed, 9 Cir., 1946, 158 F.2d 730, certiorari denied, 1947, 331 U.S. 842, 67 S.Ct. 1531, 91 L.Ed. 1853
 
 
 [3]
 H.R.Rep. No. 1922, 82d Cong., 2d Sess. 67-68 (1952). Nothing to the contrary of this statement appears anywhere in the legislative history so far as we have been advised. The bill went to the floor, was debated, went to conference and finally to the White House. Nowhere does there appear any statement or comment contrary to that of the House Committee which had drafted the bill, and the language of the proviso as drafted by that Committee remained untouched in the conference report