William P. H. FLANAGAN, Appellant,

v.

Philip YOUNG et al., Appellees.

No. 12288.

United States Court of Appeals District of Columbia Circuit.

Argued March 18, 1955.

Decided Dec. 22, 1955.

Mr. James W. Kelleher, Boston, Mass., of the bar of the Supreme Judicial Court of Massachusetts, pro hac vice, by special leave of Court, with whom Mr. Daniel J. Hanlon, Washington, D. C., was on the brief, for appellant. Mr. James F. Reilly, Washington, D. C., also entered an appearance for appellant.

Mr. William P. Arnold, Atty., Dept. of Justice, with whom Asst. Atty. Gen. Warren E. Burger and Mr. Melvin Richter, Atty. Dept. of Justice, were on the brief, for appellees.

Before WILBUR K. MILLER, WASHINGTON and DANAHER, Circuit Judges.

WASHINGTON, Circuit Judge.

This case raises the question whether the protection of Section 14 of the Veterans' Preference Act, 5 U.S.C.A. § 863,[1] is available to a veteran charged with political activity under the Hatch Act, 5 U.S.C.A. § 118i.

1. The full text of 5 U.S.C.A. § 863 is as follows:

"§ 863. Discharge, suspension, etc., only for cause; reason in writing; advance notice; personal appearance; findings and recommendations

"No permanent or indefinite preference eligible, who has completed a probationary or trial period employed in the civil service, or in any establishment, agency, bureau, administration, project, or department, hereinbefore referred to shall be discharged, suspended for more than thirty days, furloughed without pay, reduced in rank or compensation, or debarred for future appointment except for such cause as will promote the efficiency of the service and for reasons given in writing, and the person whose discharge, suspension for more than thirty days, furlough without pay, or reduction in rank or compensation is sought shall have at least thirty days' advance written notice (except where there is reasonable cause to believe the employee to be guilty of a crime for which a sentence of imprisonment can be imposed), stating any and all reasons, specifically and in detail, for any such proposed action; such preference eligible shall be allowed a reasonable time for answering the same personally and in writing, and for furnishing affidavits in support of such answer, and shall

Plaintiff-appellant, a veteran preference eligible employed in the classified civil service in the Post Office Department, brought suit in the District Court to enjoin the Civil Service Commission and the Postmaster General from discharging him on charges of having engaged in political activities in violation of the Hatch Act. After a hearing, the complaint was dismissed, and this appeal was taken.

The Civil Service Commission proceeded against Flanagan in accordance with its regulations relating to charges of prohibited political activities.[2] In brief, these provide for a "Proposed Order" stating the charges against the employee, a unilateral hearing,[3] the holding of which is discretionary with the Commission, and the presentation of evidence on behalf of the employee, whose witnesses may be cross-examined by counsel for the Commission. No evidence is presented by the Commission and there is no right of cross-examination by the employee. The Commission here entered a "Proposed Order," charging that Flanagan had "engaged in political activity in violation of Civil Service Rule IV and s.9(a) of the Hatch Political Activities Act during his employment by the Post Office Department," and allowing Flanagan a period of fifteen days in which to reply to the charges and to present evidence in refutation. Appellant filed a reply denying the charges and claiming the benefit of

the procedures of the Veterans' Preference Act. A hearing was then held before the Chief Examiner of the Civil Service Commission. Attorneys for the Commission presented a summary of the results of the Commission's investigation, without putting witnesses on the stand. No cross-examination of the Commission's witnesses or informants was permitted. Flanagan submitted affidavits controverting the charges. After considering these, the Commission directed Flanagan's discharge by the Government agency employing him.

Appellant was admittedly given all the procedural rights which the Civil Service Commission accords Government employees charged with prohibited political activities. But he claims that Section 14 of the Veterans' Preference Act, 5 U.S.C.A. § 863, and the Commission's regulations under it cover discharges of veterans for Hatch Act violations, and should have been applied in his case. He says that substantial rights were thus denied him. In examining these contentions, which are controverted by the Government, we first examine the statutory background.

I

The prohibition of political activities by employees in the competitive civil service of the Federal Government has a history longer even than the modern civil service itself.[4] In 1876 Congress prohibited the bulk of employees in the

have right to appeal to the Civil Service Commission from an adverse decision of the administrative officer so acting, such appeal to be made in writing within a reasonable length of time after the date of receipt of notice of such adverse decision: *Provided*, That such preference eligible shall have the right to make a personal appearance, or an appearance through a designated representative, in accordance with such reasonable rules and regulations as may be issued by the Civil Service Commission; after investigation and consideration of the evidence submitted, the Civil Service Commission shall submit its findings and recommendations to the proper administrative officer and shall send copies of the same

to the appellant or to his designated representative, and it shall be mandatory for such administrative officer to take such corrective action as the Commission finally recommends: *Provided further*, That the Civil Service Commission may declare any such preference eligible who may have been dismissed or furloughed without pay to be eligible for the provisions of section 864 of this title. (June 27, 1944, ch. 287, § 14, 58 Stat. 390; Aug. 4, 1947, ch. 447, 61 Stat. 723.)"

2. 5 C.F.R. §§ 4.101 et seq. (1949).

3. 5 C.F.R. § 4.104(c) (1949).

4. Friedman & Klinger, The Hatch Act: Regulation by Administrative Action of Political Activities of Government Em-

executive branch from soliciting political contributions from fellow employees and provided criminal penalties for violation of the statute. Ex parte Curtis, 1882, 106 U.S. 371, 1 S.Ct. 381, 27 L.Ed. 232; 5 U.S.C.A. § 118o. In 1877 President Hayes and in 1886 President Cleveland issued orders directed against political activities by Federal employees.[5] In 1907 President Theodore Roosevelt issued the executive order which became the basis of the present law as Civil Service Rule I; that Rule, with an amendment necessitated by the Hatch Act, is still in effect.[6]

In 1939 Congress by enacting the Hatch Act gave a statutory basis to the administrative prohibition, extending it at the same time to all Government employees, whether or not in the competitive civil service, with limited exceptions enumerated in the statute. The Hatch Act, as subsequently amended,[7] forbids, in addition to the activities named in the statute, all activities theretofore prohibited by the Civil Service Commission.[8]

The congressional policy of granting to veterans of the armed services a preference in obtaining and keeping Government employment has an even longer history, dating from the early days of the Republic. See Hilton v. Sullivan, 1948, 334 U.S. 323, 336, 68 S.Ct. 1020, 92 L.Ed. 1416. Finally, in 1944, Congress enacted the Veterans' Preference Act, designed to codify, broaden and strengthen all preferences in regard to Federal service granted to veterans. Under that Act, no permanent or indefinite preference eligible (other than a probationary employee) may be discharged "except for such cause as will promote the efficiency of the service", after the Act's procedures have been observed.[9] And it was expressly provided that "All Acts and parts of Acts inconsistent with the provisions hereof are hereby modified to conform herewith * * *." [10]

## II

We must inquire, then, whether a discharge for engaging in political activities forbidden by the Hatch Act is a discharge "for such cause as will promote the efficiency of the service", within the meaning of the Veterans' Preference Act. We think the answer is clearly in the affirmative. The Supreme Court, in upholding the constitutionality of the Hatch Act, has in substance held that nonpartisanship in the official conduct of a Government employee leads to more adequate and efficient performance of his duties. United Public Workers of America v. Mitchell, 1947, 330 U.S. 75, 96–97, 67 S.Ct. 556, 91 L.Ed. 754; see also Ex parte Curtis, supra, 106 U.S. at page 373, 1 S.Ct. 381. Discharge of an employee for forbidden political activity is a discharge for a "cause" resulting from the individual's "behavior or conduct";[11] certainly in the present case the alleged conduct bore a direct relationship to the performance of official duty. The

ployees—I, 7 Fed.B.J. 5, 6–7 (1945); Esman, The Hatch Act—a Reappraisal, 60 Yale L.J. 986, 988–90 (1951); Note, Political Activities of Federal Civil Servants, 15 Geo.Wash.L.Rev. 443, 445–47 (1947).

5. Friedman & Klinger, loc. cit. supra, n. 4, at 7.

6. New Civil Service Rule IV, 5 C.F.R. § 4.1 (1949).

7. 54 Stat. 767 (1940), 56 Stat. 181 (1942), 60 Stat. 937 (1946), and 64 Stat. 475 (1950).

8. 5 U.S.C.A. § 118l.

9. 5 U.S.C.A. § 863 supra, n. 1.

10. 5 U.S.C.A. § 867.

11. See Laden v. Crosson, D.C.E.D.Pa.1952, 108 F.Supp. 240, 243, where Chief Judge Kirkpatrick stated:
"* * * it would appear that the 1944 Act with the procedural rights which it accorded the veteran was dealing with dismissals or demotions for 'cause' in the sense of the individual behavior or conduct of the employee or, possibly, his capabilities and that when it spoke of promoting the efficiency of the service, in that part of the Act it had in mind promoting efficiency by the removal of incompetents."

appellant, employed in the Post Office Department, was charged with expediting the campaign mail of his political friends and delaying the campaign mail of his political enemies. Discharge of an employee for conduct of that sort— when established—would clearly "promote the efficiency of the service".[12]

## III

█ The Government argues that the appellant was not entitled to the protection given by Section 14, 5 U.S.C.A. § 863, because that section applies only where action against an employee is taken by the employing agency, whereas in Hatch Act cases the Civil Service Commission has original and exclusive jurisdiction. Appellant, on the other hand, contends that under Section 14 the Commission could not legally initiate the proceedings against him, but that only the Postmaster General could do so.

The Hatch Act contains no provision as to the agency which shall enforce the statutory prohibitions, except to say that the Civil Service Commission may by unanimous vote reduce the employee's penalty from that of dismissal to that of suspension from service for at least ninety days.[13] Accordingly, when the question arose in 1940, shortly after the adoption of the Hatch Act, the Attorney General ruled that "whether there has been a violation is determinable by the head of the department or independent establishment concerned with making the removal." [14] However, since the Hatch Act and amended Civil Service Rules prohibited the identical activities, the Civil Service Commission did not set up new procedures to enforce the Hatch Act directly. It continued to enforce its existing rules on prohibited political activities in accordance with procedures which it had established for that purpose: procedures which called for proceedings conducted solely by and within the Commission itself.[15]

When the Hatch Act was challenged in the courts in United Federal Workers of America v. Mitchell, D.C.D.C. 1944, 56 F.Supp. 621, the Commission's jurisdiction to conduct such proceedings —leading as here to an order directing the employing agency to dismiss or discipline the employee—was upheld. Id., 56 F.Supp. at pages 625–626. A like holding was made on appeal. United Public Workers of America v. Mitchell, 1947, 330 U.S. 75, 80, 67 S.Ct. 556, 91 L.Ed. 754. The Supreme Court said, 330 U.S. at page 80, 67 S.Ct. at page 559: " * * * power to discipline members of the competitive classified civil service continues in the Commission under the Hatch Act by virtue of the present applicability of the Executive Order No. 8705, March 5, 1941." The cited Executive order contains no express reference to proceedings under the Hatch Act: it provides, *inter alia,* that where the Commission finds that any employee has violated the Civil Service Act or Rules, or any Executive order or any regulation of the Commission, it shall certify the facts to the proper appointing officer with specific instructions as to discipline or dismissal of the employee; if these instructions are not obeyed, the Commission shall certify the facts to the proper disbursing and auditing officers, and the latter shall thereupon discontinue payment of the employee's salary. The jurisdiction of the Commission in Hatch Act cases is, there-

---

12. We note that the Civil Service Commission in Matter of Bailey, Hatch Act Decisions No. 18, p. 156 (1948), has taken the contrary view, to wit, that discharges under the Hatch Act and discharges to promote the efficiency of the service differ in character. But in the light of the decisions referred to and in the absence of any statement of reasons supporting the Commission's view, its opinion is not persuasive.

13. 5 U.S.C.A. § 118i(b), as amended, 64 Stat. 475.

14. 39 Ops.Att'y Gen. 446, 447 (1940). To the same effect, id. at 462, 464 (1940).

15. See Executive Order No. 8705, 6 Fed. Reg. 1313 (1941), amending and readopting as amended the applicable Civil Service Rules I and XV.

fore, based on its general authority over Government employees, under direction of the President. It derives from no direct statutory source.[16]

The United case arose before the enactment of the Veterans' Preference Act, and the court was not asked to pass—nor did it pass—upon the impact of that Act on Hatch Act proceedings. Nor does the Veterans' Preference Act in terms mention the Hatch Act. Section 14, 5 U.S.C.A. § 863, quoted in footnote 1 above, does not in terms deny original jurisdiction to the Civil Service Commission in Hatch Act cases. It provides simply that the veteran whose discharge is sought shall have at least thirty days' written notice stating all reasons in detail for his discharge; that he shall be allowed a reasonable time for answering in writing and furnishing affidavits in support of his answer; and that he shall have "the right to appeal to the Civil Service Commission from an adverse decision of the administrative officer so acting," and that the Commission "shall submit its findings and recommendations to the proper administrative officer". That section does not state that the Commission shall no longer exercise jurisdiction in a political activity case in an appropriate situation. It does not command that all such actions must commence at the agency level. The absence of a clear congressional mandate on this point can only mean, we think, that Congress did not intend to change the existing allocation of authority. Certainly we cannot infer from the provision that a preference eligible shall have the right to appeal to the Civil Service Commission that Congress was withdrawing original jurisdiction from the Civil Service Commission in Hatch Act cases. Such a provision is equally consistent with the view that if an agency should bring charges of unlawful political activity against a veteran a decision adverse to him could be appealed to the Commission.[17]

We must, moreover, note that the Civil Service Commission is a bipartisan agency. The task of policing the political activities of Government employees is one peculiarly suited to such an agency. We cannot lightly infer that Congress intended to deprive it of that task.

In the light of all these considerations, Section 14, 5 U.S.C.A. § 863, must be construed to permit the Civil Service Commission to initiate the proceedings here.

## IV

Having concluded, therefore, that the Commission could conduct Hatch Act proceedings against appellant, we turn to the question of applicable procedures. As to this, the Government argues that all the Commission need provide are those rights and procedures which it has traditionally given in Hatch Act cases. But this, it seems to us, is to disregard the congressional purpose in passing the Veterans' Preference Act, and its all-inclusive language. And, as we have seen, the Commission's jurisdiction in Hatch Act cases stems from an Executive order phrased in general terms, and cov-

16. No statute subsequent to the Supreme Court's pronouncement appears to have changed the situation. At least, none has been cited to us.

17. Whether concurrent jurisdiction to initiate proceedings under the Hatch Act resides in the head of the employing agency is a question not now before us, and need not be passed on. In the United case, supra, the District Court said—by way of dictum—that " * * * the appointing authorities, namely, the heads of departments and independent agencies, who before the enactment of the Hatch Act were responsible for disciplinary measures, including dismissal, of employees not classified, remain charged with the duty of enforcement of such discipline, including dismissal, only they are required to apply the rules of conduct and disciplinary measures set forth in the Hatch Act." 56 F.Supp. at page 626. On appeal, the Supreme Court pointed out that "There is no designation of a single governmental agency for its [the Hatch Act's] enforcement." 330 U.S. at page 79, 67 S.Ct. at page 559.

ering a wide variety of offenses. Executive Order No. 8705 of March 5, 1941. To say that the Commission can disregard the Veterans' Preference Act in the present situation would logically lead to the conclusion that it can do so in any case covered by the Executive order—a conclusion which would go far to defeat the congressional purpose of protecting veterans.

■ It is a truism to say that the Veterans' Preference Act is to be construed, wherever possible, in favor of the veteran. Wittner v. United States, 1948, 76 F.Supp. 110, 110 Ct.Cl. 231; Stringer v. United States, 1950, 90 F. Supp. 375, 117 Ct.Cl. 30. Especially should this be done where the right to defend oneself from charges of wrongdoing is the right involved. The veteran is given a distinct personal privilege in this regard. He is treated with discrimination: he gets better treatment than the average Government employee.[18] But that is what Congress intended. We find no reason to deny the veteran what Congress has given him.

■ Once the Commission commenced discharge proceedings against appellant, we think it was required to give him the kind of notice and hearing to which he was entitled under Section 14, 5 U.S.C.A. § 863, and the Commission's regulations under it—that is, the same type of procedure accorded to preference eligibles in other cases involving serious disciplinary action for cause.[19] It could not fail to obey the intent of Congress as reflected in its latest pronouncement, the Veterans' Preference Act.[20]

As we have seen, the Act requires that an employee to be discharged shall be given at least thirty days' advance written notice (with exceptions not relevant here) stating "any and all reasons, specifically and in detail, for any such proposed action;" and "shall be allowed a reasonable time for answering the same personally and in writing, and for furnishing affidavits in support of such answer". The Commission should have granted appellant those rights: it did not. He was entitled to an initial decision by an administrative officer of the Commission, just as he would in the Department which employed him. Then, in the event of an "adverse decision," he was also entitled to appeal to the Commission itself, on the same basis as any other veteran sought to be discharged for cause. Thereupon, the Commission's regulations promulgated to govern veterans' appeals to the Commission (5 C.F.R. § 22.1) will apply. They provide, inter alia, that the Commission may not give its informing witnesses pledges of confidence (5 C.F.R. § 22.8 (b)); that the veteran has the right to a hearing, in which the employing agency may participate; and that both parties shall have the right to produce and to cross-examine witnesses (5 C.F.R. § 22.9(a), (b) and (c)). The Commission cannot deny to a veteran charged under the Hatch Act the same sort of right of appeal granted to veterans charged with other offenses. Appellant was not given, therefore, the procedural rights to which he was entitled.

For these reasons, the order of the District Court must be

Reversed for proceedings consistent with this opinion.

18. Compare Section 14, 5 U.S.C.A. § 863, with 5 U.S.C.A. § 652, where the veteran may be denied the benefits of Section 14 "only if he so elects."

19. Section 14, 5 U.S.C.A. § 863, applies where a veteran is sought to be "dis-

charged, suspended for more than thirty days, furloughed without pay, reduced in rank or compensation, or debarred for future appointment".

20. Cf. Myers v. Hollister, 1955, 96 U.S. App.D.C. 388, 226 F.2d 346.