### UNITED STATES of America
### v.
### WALLACE & TIERNAN, INC., Robert T. Conner, Charles E. Hough.
### Crim. No. 784-64.

United States District Court
District of Columbia.
Oct. 30, 1964.

---

Edward S. Szukelewicz, Sp. Atty., Dept. of Justice, for plaintiff.

Nicholas J. Chase, Washington, D. C., for defendant Conner.

Frederick B. Lacey, Newark, N. J., for defendants Wallace & Tiernan, Inc., and Hough.

YOUNGDAHL, District Judge.

The defendants were indicted for having knowingly and willfully falsified and concealed material facts in a matter within the jurisdiction of an agency of the United States in violation of 18 U.S.C. § 1001 (1958). The case arose out of information submitted by the defendants to the Food and Drug Administration relating to Dornwal, a new tranquilizer. By means of a pretrial motion to dismiss the indictment on the ground that the special grand jury which returned it was illegally constituted, the defendants have raised a purely legal question of statutory interpretation and construction. Hence, further elaboration of the evidentiary facts which engendered legal action is unnecessary.

Some background, however, and reference to relevant statutory provisions are essential to illuminate the issue. On February 13, 1964, the acting Attorney General of the United States designated two Department of Justice attorneys to conduct grand jury inquiry into the subject matter of the indictment. The United States Attorney for the District of Columbia addressed a letter to Judge Tamm of this court on April 29, 1964, which stated that it was necessary in the public interest that a special grand jury be summoned on April 30, 1964, under authority of Rule 6(a) of the Federal Rules of Criminal Procedure. On the

same date, April 29, Judge Tamm entered an order directing that legally qualified persons be summoned to serve on a special grand jury required by the public interest. That special grand jury was selected on May 14, 1964, and indicted the defendants on July 28, 1964.

The authority invoked and exercised in summoning this additional grand jury was Federal Rule of Criminal Procedure 6(a) which provides, in pertinent part, that "the court shall order one or more grand juries to be summoned at such times as the public interest requires." In challenging this procedure, the defendants rely upon a provision of the District of Columbia Code which also deals with additional grand juries. Section 1408 of Title 11 (1961 ed.), which was enacted in 1922, long prior to Rule 6(a), provides:

"Whenever the United States attorney for the District of Columbia shall certify in writing to the chief judge of the United States District Court for said District, or, in his absence, to the senior associate judge of said court, that the exigencies of the public service require it, said chief judge or senior associate judge may, in his discretion, order an additional grand jury summoned * * *."

In 1963, Congress revised Title 11 and transformed old Section 1408, quoted above, into new Section 2306, which consolidated several provisions of old Title 11. The second paragraph of new Section 2306(a) is in substance a reinactment of old Section 1408. The only significant change in language was the substitution of "presiding judge" for "senior associate judge" in the earlier section.[1]

During oral argument, the parties stipulated that Chief Judge McGuire was not absent during the times here material, but was holding court and in the full performance of his duties.

Thus, at this point, the problem raised comes into focus and can be stated with some understanding. The defendants' position is that a special grand jury must be called or summoned by the chief judge, or in his absence, by the "presiding judge" in order to be legally constituted. They contend that new Section 2306 prevails over, or at least limits, the authority conferred on the "court" by Rule 6(a). Consequently, they argue, since the chief judge was not absent and did not himself summon the special grand jury that returned the indictment in this case, that grand jury was unlawfully constituted and the resulting indictment a nullity. On the other hand, the government asserts that Judge Tamm's action was proper because Rule 6(a) bestows either superseding or additional authority on the "court", meaning any judge,[2] to summon an additional grand jury. Alternatively, the government suggests that Judge Tamm was a "presiding judge" within Section 2306 in that he was designated by the chief judge to "preside" over criminal division number one of this court during the times in question. Further, the criminal number one judge, as a result of aged custom and practice in this court, has and discharges the responsibility of summoning additional grand juries. Accordingly, it is urged, because of this division of ju-

---

1. The stated reason for the change was to conform this section to 28 U.S.C. § 136 (1958). H.R.Rep. No. 377, 88th Cong., 1st Sess. A52–53 (1963); S.Rep. No. 743, 88th Cong., 1st Sess. 60–61 (1963). Section 136 designates the judge senior in commission under seventy as the chief judge and directs that he "preside at any session which he attends." Subsection (e) further states that: "[I]f a chief judge is temporarily unable to perform his duties as such, they shall be performed by the district judge in active service, present in the district and able and qualified to act, who is next in precedence." This section appears merely to insure the continual presence of a "presiding judge" on a multi-judge court, in the office of that judge senior in commission under seventy who is present, active and qualified.

2. See note 9 infra, and accompanying text.

dicial function among the members of the court, the chief judge was absent for purposes of Section 2306, although physically present.

The obvious question at the outset is whether either Section 2306 or Federal Rule 6(a) prevails to the exclusion of the other. Alternatively, it must be determined whether they can be read together to give effect to both. These inquiries are two sides of the same coin, each subsuming the other. To answer them requires some historical perspective.

Prior to 1922, the Federal Judicial Code provided in substance that most district courts had authority to summon only one grand jury at a time at a single place of holding court.[3] In 1922, the Justice Department offered legislation which would permit additional grand juries in the District of Columbia. The impetus for such a bill appears to have resulted from congestion in the District's criminal docket[4] produced largely by a heavy volume of war fraud cases.[5] In response to the alleged need, Congress passed an act which later became Section 1408, as quoted above. It is clear from the legislative history that the purpose of this act was to allow the court to summon an additional grand jury in the manner prescribed.[6] No doubt the statute was written to limit the exercise of this power to the chief or senior associate judge because the prevailing law at the time for calling a regular grand jury vested the power in a "district judge or the senior district judge.[7]" This latter provision was obviously to distinguish between single and multi-judge district courts. There is, further, no doubt that Section 1408 was intended to be a permanent law which would permit special grand juries to be summoned when needed in the future.[8]

From 1922 until 1946, then, it can be said with hindsight that the law relating to summoning regular or special grand juries in the District of Columbia was clear. Then, in 1946, the Federal Rules of Criminal Procedure became effective. Rule 6(a) empowered the "court" to order one or more grand juries. Since each judge on a multi-judge court has equal power and authority with all others, see, e. g., Tanner Motor Livery, Ltd. v. Avis, Inc., 316 F.2d 804 (9th Cir. 1963), unless otherwise provided, presumably Rule 6 (a) contemplated that any judge on a district court could summon an additional grand jury upon a proper showing.[9]

---

3. "No grand jury shall be summoned to attend any district court unless the judge thereof, in his own discretion or upon a notification by the district attorney that such jury will be needed, orders a venire to issue therefor. If the United States attorney for any district which has a city or borough containing at least three hundred thousand inhabitants shall certify in writing to a district judge, or the senior district judge of the district, that the exigencies of the public service require it, the judge may, in his discretion, also order a venire to issue for a second grand jury." Act of March 3, 1911, ch. 231, § 284, 36 Stat. 1165.
See also, United States v. Perlstein, 39 F.Supp. 965, 971 (D.N.J.1941); 4 Barron, Federal Practice and Procedure § 1891 (note); and Orfield, The Federal Grand Jury, 22 F.R.D. 343, 364. The contrary view expressed in Morris v. United States, 128 F.2d 912, 916 (5th Cir. 1942) seems clearly in error in retrospect.

4. 62 Cong.Rec. 5932 (1922) (Mr. Nelson); H.R.Rep. No. 943, 67th Cong., 2d Sess. 1 (1922).

5. 62 Cong.Rec. 6998–7001 (1922) (various).

6. See, e. g., 62 Cong.Rec. 5932 (1922) (Mr. Nelson).

7. Act of March 3, 1911, supra note 3.

8. The Senate passed the bill as an independent measure prepared by the Attorney General. The House, and eventually Congress, made it a part of the District of Columbia Code to insure its permanence. 62 Cong.Rec. 1011 (1922).

9. Extremely persuasive evidence that Congress intended Rule 6(a) to permit any judge to summon a grand jury rests in the fact that in 1937, in an act "[t]o permit grand-jury extensions to be ordered by *any* district judge," Congress deleted the words "or senior district judge" from the 1911 Act, supra, note 3. Act of August 24, 1937, ch. 746, 50 Stat. 748.

784

The statutory authority for the Federal Rules expressly provided that "[a]ll laws in conflict with such rules shall be of no further force or effect after such rules have taken effect." 18 U.S.C. § 3771 (Supp. V, 1963). Therefore, it would seem that the emergence of Rule 6(a) would have repealed Section 1408 under both § 3771 and general principles of law [10] *had the issue been raised.* Section 1408 and Rule 6(a) still could have been read together as they were not patently inconsistent. But since both contemplated the identical problem, i. e., summoning additional grand juries in a particular way, and since one purpose of the Federal Rules was to provide uniformity in the federal courts,[11] the most reasonable inference and construction would seem to have been that Rule 6(a) superseded Section 1408 of the local Code. Thus, it appears that between 1946 and 1964, any judge on the district court could have summoned an additional grand jury upon a proper showing, and Judge Tamm would have acted pursuant to the law in these circumstances. Indeed, this court will take judicial notice of the fact that since the adoption of Rule 6(a), it has been the settled practice and custom of both the court and the District Attorney's office to proceed as if Rule 6(a) were the law. Accordingly, requests for additional grand juries, along with certain other procedural matters, have been rather consistently presented to the judge designated by the chief judge to preside over criminal division number one. Such, at least, has been my personal experience over the past thirteen years on this bench.

10. A later statute of general application in federal courts throughout the country supersedes a prior, conflicting act of only local application. See, Jordan v. United States, 93 U.S.App.D.C. 65, 207 F.2d 28 (1953); and recent approval in Broden v. Bowles, 35 F.R.D. 13 (D.D.C. 1964).

11. E. g., United States v. Carper, 116 F. Supp. 817 (D.D.C.1953).

12. H.R.Rep. No. 377, 88th Cong., 1st Sess. 2 (1963); S.Rep. No. 743, 88th

But this case involves an additional grand jury called under Rule 6(a) in April, 1964. Account, therefore, must be taken of the revision of Title 11 of the District of Columbia Code which became effective on January 1, 1964. As stated previously, new Section 2306 of that title revised and codified old Section 1408. Although there is nothing in the legislative history of the revision to indicate that Congress was cognizant of this potential conflict, that history does suggest a definite intention to retain the additional grand jury provision in 2306(a) as the law in the District. Most salient evidence of this intention, of course, is the mere existence of this precise and unambiguous statute in the new Code. The Court is obliged to presume that Congress intended the local grand jury section to have some force and effect, either over and above, or in consonance with, Federal Rule 6(a). Additional evidence of an intention to give vitality to the local grand jury provision is gleaned from the stated purpose and actual process of the revision itself. Both the House and the Senate committees which considered the bill expressly stated that they were revising, codifying and enacting the parts of the Code involved. They further explained that:

"Revision, as distinguished from simple codification, means the substitution of plain language for awkward terms, *reconciliation of conflicting laws, omission of obsolete, superseded or repealed sections,* and consolidation of similar provisions." [12]

Cong., 1st Sess. 4 (1963) (emphasis added). The reports further stated that there was no intention to change substantive law. But this statement is of little weight here. Contrary to the way the Court now indicates it may have held had the issue of conflict been presented prior to 1964, in fact, the issue has never been judicially determined. Congress may well have, indeed must be presumed to have, believed it was not changing substantive law. The Court cannot now say, with the force of law, that Section 1408 was in fact implicitly repealed by

Thus, Section 2306(a) remains in the Code in spite of a clear purpose to weed out conflicting, obsolete and superseded provisions. The committee reports also contained tables of sections omitted from the revision because repealed or for other reasons. A frequent explanation for omission was that the particular section was superseded by a subsequent Federal Rule of Procedure. Especially significant was the express repeal of old Section 1406 [1408 is here in issue] because the subject matter, term of service of a grand jury, was covered by Federal Rules of Criminal Procedure 6(c) and (d) [Rule 6(a) is here in issue].[13] This background cannot be ignored. While the Court has doubts that Congress, in the interest of uniformity if no other, would have retained Section 1408 in the revision had the potential problem been expressly and thoroughly considered, that belief does not grant the Court license to disregard federal legislation.[14] Therefore, the Court reluctantly concludes that Section 2306(a) must be acknowledged as the law in the District at this time. As such, it must be construed either together with Rule 6(a), or, if there is irreconcilable conflict, Section 2306(a) must prevail since it is more specific, of local application, and most importantly, later in time.[15]

■■ It is this Court's opinion that the two provisions can be read together harmoniously. Both Rule 6(a) and Section 2306 confer authority on the court to summon additional grand juries. Duplication is not inconsistency. Rule 6(a) speaks, in express terms, only of the power of a court to call grand juries. On the other hand, Section 2306 speaks of a similar power, but in addition, it specifies who on the District Court for the District of Columbia must exercise that power. The latter section is not a limitation of Rule 6(a) in substance, for additional grand juries may be called here to the same extent as elsewhere. Accordingly, whether an additional grand jury is requested under the authority of Rule 6(a) or Section 2306, only the "chief judge, or in his absence, the presiding judge" may actually exercise the authority. In reaching these conclusions, the Court is guided by the settled principles of construction to give effect, as far as possible, to every word of a statute, and "to save and not to destroy."[16]

■ The final consideration is the government's contention that even reading the provisions as has been done, Judge Tamm's action was still lawful because he, by designation of the chief judge, was "presiding" for purposes of Section 2306(a), even though the chief judge was physically present. This temptation to play with words must also be rejected. "Absence" has a clear mean-

---

Rule 6(a), and therefore Section 2306 is a change in substantive law not intended by Congress which may be repudiated.

13. See Table 5 of the appendix in the reports cited in the preceding note.

14. The process of ascertaining a sometimes fictional congressional purpose in order to deal with the inevitable problems of conflicting legislation may often produce undesirable results in a system of jurisprudence which strives for some degree of certainty. The instant case may be illustrative. Unless congressional attention is expressly directed to the problem, the law in the District providing for additional grand juries may soon again be uncertain. The Federal Rules of Criminal Procedure are now in

the process of revision. When the new Rule 6(a) or its equivalent becomes effective, the question decided today may well be reborn.

15. The government suggests a third alternative construction which the Court must reject. It is argued that the two provisions confer separate and distinct, equally valid authority on the court to enlist a special grand jury. While this approach has appeal as an easy solution to the problem, it in effect erases newly enacted Section 2306(a) from the books, since contrary to its express terms, any judge could call a special grand jury under Rule 6(a).

16. United States v. Menasche, 348 U.S. 528, 538–539, 75 S.Ct. 513, 520, 99 L.Ed. 615 (1955) and cases cited therein.

ing in our language and cannot, in the Court's opinion, be reasonably stretched to encompass physical presence coupled with a delegation of power. Furthermore, even assuming the absence of the chief judge, it is very doubtful that the judge sitting in criminal division number one in this case would be a "presiding judge" within the meaning of Section 2306(a).[17]

 It necessarily follows that the special grand jury which returned the indictment in the instant case was not summoned according to the statutory mandate, but was illegally constituted and the resulting indictment was a nullity. The right to a lawful grand jury flows directly from the Constitution[18] and, in the opinion of the Court, violation of the right in these circumstances is prejudicial *per se*.[19]

██ In summary, newly enacted Section 2306 of Title 11 of the District of Columbia Code can only reasonably be read as a refinement or definition of the power to summon an additional grand jury contained both therein and in Rule 6(a). Since the chief judge was holding court on the dates here pertinent, only he could exercise that power. For the foregoing reasons, the indictment is therefore dismissed. In view of this holding, the other motions made by defendants are hereby dismissed as moot.

It is so ordered.

17. See note 1 supra, and accompanying text.

18. U.S.Const. amend. V begins: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury * * *."

19. The government has not addressed itself to the issue of prejudice, presumably because dismissal of the indictment is the sole way to vindicate this improper procedure and to give meaning to the statute. Prejudice in the ordinary sense need not be shown, Clark v. United States, 19 App.D.C. 295 (1902); Underwood v. United States, Crim. No. 72587 D.D.C., November 1, 1943; see also

United States v. Carper, 116 F.Supp. 817 (D.D.C.1953), because, as the Supreme Court has stated:

"Inasmuch as the initiation of prosecution through grand juries forms a vital feature of the federal system of criminal justice, the law governing its procedures and the appropriate considerations for determining the legality of its actions are matters of first importance." United States v. Johnson, 319 U.S. 503, 507, 63 S.Ct. 1233, 1235, 87 L.Ed. 1546 (1943).

It must be added, however, that since other factors may be involved were this issue to arise after a conviction, this opinion is strictly limited to the instant case where the issue was raised before trial.