Per Curiam:
: These are two suits by former employees of the International Cooperation Administration (ICA) claiming that they should have been transferred as permanent employees to the Agency for International Development (AID) when it was established in 1961-1962. Both plaintiffs were informed by the Administrator of AID that, under the Foreign Assistance Act of 1961, 75 Stat. 424, they would not be transferred to the new agency on a permanent basis, and neither was given a permanent appointment there.
Section 621(d) of the Foreign Assistance Act of 1961, 75 Stat. 424,445-46, provided:
On the date of the abolition of the International Cooperation Administration the President shall transfer to an officer or head of an agency of the United States Government carrying out functions under part I such offices, entities, functions, property, records, and funds of such agency, not otherwise disposed of by this Act, as may be necessary, and notwithstanding any other provision of law, shall transfer to such officer or head of agency such personnel of the International Cooperation Administration as the President determines to oe necessary [emphasis added].
*528 President Kennedy (by a letter of September 30, 1961) authorized the Secretary of State to establish, within the Department of State, the Agency for International Development, and empowered the Secretary “to utilize, in connection with that Agency and to such extent as you may deem to be advantageous to the Government, the services of personnel employed * * * by the Department of State (including the International Cooperation Administration) or the Development Loan Fund under the Mutual Security Act of 1954, as amended.” An Executive Order to similar effect was also issued. Executive Order 10973, November 3, 1961, 26 Fed. Reg. 10469. The Secretary of State, in turn, delegated his authority over personnel to the Administrator of the newly-created AID; such personnel of ICA were to be transferred to the new organization “as the Administrator shall deem necessary.” 26 Fed. Reg. 10608 (Nov. 3,1961).
The court has already ruled that Section 621(d) of the Foreign Assistance Act (together with the implementing delegations) gave the Administrator full discretion to decide which employees of ICA should be transferred to AID— without regard to the provisions of the Veterans’ Preference and Lloyd-La Follette Acts. Swanson v. United States, 166 Ct. Cl. 597, cert. denied, 379 U.S. 889 (1964). Section 621(d) provided that “notwithstanding any other provision of the law” only such personnel of ICA were to foe transferred as the President (or Ms delegate) “determines to be necessary.” In commenting on the conference report adopting tMs language, the House managers stated that the section made it clear “that only such ICA personnel should be transferred to the new agency as was determined by the President to be necessary. This provision will facilitate the ability of the AID Admmistrator to weed out those employees who are not deemed adequate to the important tasks of the Agency, without requiring a wholesale replacement of personnel.” H. Rept. No. 1088, 87th Cong., 1st Sess., p. 63. In an earlier case construing the less explicit terms of the Mutual Security Act of 1952, 66 Stat. 141, 144-45 — a predecessor of the Foreign Assistance Act of 1961 — the District of Columbia Cir *529 cuit lield that the protections of -the Veterans’ Preference and Lloyd-La Follette legislation had been set aside by the Congress. Myers v. Hollister, 226 F. 2d 346 (C.A.D.C., 1955), cert. denied, 350 U.S. 987 (1956). Congress was probably aware of Myers v. Hollister when it passed' Section 621(d) of the Foreign Assistance Act in 1961. At any rate, the case bears directly on the question before us. Our Swanson order cited Myers v. Hollister. We think it equally, applicable to the present cases. Plaintiffs cannot invoke the normal rights of veterans and civil servants.
Plaintiffs press Saltzman v. United States, 161 Ct. Cl. 634 (1963), in support of their argument that these rights still prevailed after the 1961 Act, but that decision is quite different. ‘ There, the Atomic Energy Act of 1946, while providing for application to the Atomic Energy Commission of the civil^service and classification statutes, also authorized the Commission, “to the extent the Commission deems such action necessary to the discharge of its responsibilities”, to employ personnel and fix their compensation without regard to such laws. 60 Stat. 755, 771, 42 U.S.C. § 2201(d). Saltz-man had permanent civil service status in his Commission job, but the Commission attempted to invoke this statutory provision to change his status, while he was on the job, to an excepted appointment. The court held that the statute did not empower the Commission to convert Saltzman’s status from a classified position in the AEC to an excepted one, and thus deprive him of his existing rights under the Lloyd-La Follette Act; the statute, the court ruled, did not go so far as to affect Commission employees already in the classified civil service. Here, on the other hand, we have a differently worded Act and employees seeking positions with the new Agency for International Development — not employees already hired by that agency.
It is clear, not only that the Administrator of AID had full authority under the Foreign Assistance Act to choose which employees of ICA to transfer, but also that the Act did not impose any procedural preconditions to the Administrator’s selection. Claim is made, however, that the *530 Administrator failed to follow the procedures he himself established for determining which ICA employees should be taken over by AID. The only suggested violation is that he did not properly review the plaintiffs’ files as he said he would. Administrator Hamilton wrote to each of the plaintiffs that he had personally examined the file relating to that plaintiff and had concluded that AID did not have need for the employee’s services. There is no warrant here for the court to go behind the Administrator’s statement or to delve into the matters which he considered or had before him when he made his determinations. See United States v. Morgan, 313 U.S. 409, 421-22 (1941). Accordingly, plaintiffs have failed to show any violations of the Administrator’s own procedures.[1] Nor is any adequate factual foundation proffered for the unsupported assertion that the Administrator acted arbitrarily and capriciously in deciding not to transfer these plaintiffs. If he made a mistake, it did not rise to the level of arbitrary or capricious action.
Finally, we reject plaintiffs’ contention that they were entitled by the Constitution to an adversary hearing (or some procedure other than that accorded them). In the absence of a grant of rights by statute or regulation, federal employees may be summarily denied new employment or continued federal employment in a new agency. See, e.g., Tierney v. United States, 168 Ct. Cl. 77, 80 (1964); Batchelor v. United States, 169 Ct. Cl. 180, 183-84, cert. denied, 382 U.S. 870; Meyers v. United States, 169 Ct. Cl. 1, 5 (1965); Krennrich v. United States, 169 Ct. Cl. 6, 10, 340 F. 2d 653, 655 (1965), cert. denied, 382 U.S. 870.
Plaintiffs are not entitled to recover. Their motions for summary judgment are denied and defendant’s motions are granted. The petitions are dismissed.

 Whatever violation there may have been of ICA procedures and regulations, prior to the ending of that agency, is irrelevant to the present cases since the Administrator of AID had full authority to determine for himself what employees to transfer. Irregularities within the ICA would not foreclose the Administrator from making his decision on the grounds he deemed appropriate. He was not required to correct ICA’s records and procedures before exercising his statutory authority.