**Warren G. SCHALLER**

v.

**UNITED STATES.**

No. 534–57.

United States Court of Claims.

Decided April 7, 1961.

Rehearing Denied June 7, 1961.

Thomas A. Ziebarth, Washington, D. C., for plaintiff. Carl L. Shipley and Shipley, Akerman & Pickett, Washington, D. C., on the brief.

Sheldon J. Wolfe, Washington, D. C., with whom was Asst. Atty. Gen., William H. Orrick, Jr., for defendant.

LARAMORE, Judge.

Plaintiff, a veteran, was employed by the New York City Regional Renegotiation Board on December 22, 1952, as a Renegotiator, GS–14, at a salary of $9600 per annum. The appointment was an excepted appointment (indefinite) pursuant to section 107(c) of the Renegotiation

Act of March 23, 1951, 65 Stat. 7, 20, 50 U.S.C.A.Appendix, § 1217(c), which provided in pertinent part:

"The Board is authorized, subject to the Classification Act of 1949 (but without regard to the civil-service laws and regulations), to employ and fix the compensation of such officers and employees as it deems necessary to assist it in carrying out its duties under this title."

On August 1, 1956, the above Act was amended by Public Law 870, 84th Congress, 2d session, 70 Stat. 786, 791. The Act, as amended, provided in pertinent part:

"The Board is authorized, subject to the Classification Act of 1949 and the civil-service laws and regulations, to employ and fix the compensation of such officers and employees as it deems necessary to assist it in carrying out its duties under this title."

Upon being notified of the proposed amendment, supra, Walter J. Johnston, Director, Division of Renegotiating, took the following action relevant to recommending present employees for conversion to permanent status:

" * * * I reviewed the capabilities, performance, background, workload, type of cases, and projected assignment load of each Renegotiator and came to the conclusion that with one or two exceptions all of the Renegotiators, GS–14 would receive my recommendation for conversion.

"Since we had two Renegotiators, Messrs. Warren Schaller and Carl Malmstrom, handling construction cases and in view of the Amendment to Section 106(a) (9) of the Act approved August 3, 1955, effective after December 31, 1954, which, in effect, exempted from renegotiation construction contracts awarded as a result of formally advertised competitive bids, I knew that assignment of construction cases, already at a low ebb, would dwindle considerably and that the back log of these particular type of cases would decrease further.

"In reviewing the performance and background of the two construction Renegotiators I found that neither man had any previous experience except mainly in the construction field. With this in mind I had to make a choice as to which of the two construction men I would recommend. Based on the thorough analysis of the capability and potential of each man, it was my opinion that Mr. Malmstrom was (1) the better construction Renegotiator, and (2) that comparatively he possessed more renegotiation ability which would permit me at some future date to gradually work him into handling other cases. Since Mr. Schaller in my opinion could not be readily transferred to the handling of manufacturing cases, particularly in the aircraft, guided missile and electronic field, which was the bulk of our new assignments, I felt that a recommendation for conversion would not be warranted. On this basis, a report was made to the Chairman.

"Beginning with the latter part of July 1956 'conversion' was a main topic of conversation in this office. Mr. Schaller repeatedly expressed to me his desire to gain status for the purpose of obtaining the benefits that accrue to such employees. Mr. Schaller had spent several years in the Government service prior to coming with renegotiation and so far as I knew he had the required minimum number of years to qualify for Civil Service Retirement, should he acquire status.

"In the latter part of July or the early part of August 1956, I discussed with Mr. Schaller the declining number of construction cases in the New York Regional Board and their progressive curtailments due to the exemption of competitive bid construction contracts pursuant to the amendment under Section 106 (a) (9) of the Renegotiation Act, as

approved August 3, 1955, and Section 1453.7 of the Renegotiation Board Regulations, as amended. I told him that under those circumstances and because of the Board's contemplated reduced budget it would be superfluous for this Regional Board to have more than one Renegotiator assigned to construction cases. I added that when that time came, Mr. Schaller might prefer to resign rather than be involuntarily separated in a reduction-in-force since there was no other position as Renegotiator, GS–14, which in my opinion he could fill. Mr. Schaller remarked that he was primarily interested in conversion to status in order to have the benefits thereof. Feeling a personal responsibility because I had originally recommended him to this Regional Board, I told Mr. Schaller that if he tendered his resignation I would recommend his conversion to status. I asked him to think it over and let me know.

"On September 14, 1956 I asked Mr. Schaller for his decision. Since he would not give me a definite reply I advised the Chairman to send his papers to Headquarters without our recommendation for conversion."

Plaintiff did not submit his resignation and he was neither recommended for nor given conversion to competitive status. On September 18, 1956 he was notified that he was to be retained in *status quo*.

At or about that time Mr. Malmstrom was given permanent civil service status. He was a non-veteran who had over 20 years of Government service.

Plaintiff appealed the fact that he was not recommended or given conversion to competitive status to the Second Civil Service Region. In the decision of the Second Civil Service Region the Regional Director stated that pursuant to Civil Service Regulation 3.101 an employee to be considered for conversion must be recommended by his agency, that this recommendation was discretionary with the agency, and that neither the Veterans' Preference Act of 1944, nor any other authority, provided for an appeal to the Civil Service Commission when an agency elects not to recommend an employee for conversion under this Regulation.

Plaintiff did not appeal this decision to the Civil Service Commission Board of Appeals and Review.

By letters dated June 26 and July 8, 1957 notice of proposed reduction in force was given to plaintiff, wherein he was notified that he was in retention subgroup 3–A on the Retention Register. Effective July 31, 1957 plaintiff was separated pursuant to a reduction in force. As of that date plaintiff's Government service totaled slightly in excess of nine years.

The Retention Register as of July 25, 1957 reveals that of the GS–14 Renegotiators in the New York Regional Office of the Board, plaintiff alone was in subgroup 3–A. One person was in subgroup 2–A, and six in subgroup 1–B, including Malmstrom. These six had apparently all been given conversion to permanent status and all were non-veterans.

On July 5, 1957 plaintiff appealed the proposed reduction in force to the Civil Service Commission. His chief complaint was that he should have been given permanent civil service status in September 1956.

After a hearing, his appeal was denied by the Appeals Examining Office for the reason that the issue of conversion to civil service status could not be reopened and reconsidered in connection with plaintiff's reduction in force because this issue had already been considered by the Second Regional Office, which had advised him that the agency decision on that matter was final. The Appeals Examining Office also stated that if plaintiff had disagreed with the decision of the Second Region in November 1956, he should have appealed to the appropriate Civil Service Commission authorities in Washington, D. C., with reasonable promptness.

Plaintiff thereafter appealed to the Board of Appeals and Review, which Board on October 14, 1957 affirmed that the issue of conversion could not be reopened, and stated that because plaintiff had not been converted, as it was the right of the agency not to do, he had been properly reached in the reduction in force action.

This suit resulted, in which plaintiff sues for back pay from the effective date of the reduction in force.

Under these facts two questions are presented for decision: (1) Was the action of the agency in denying plaintiff conversion to status except on the condition that he sign a resignation in blank, and then assigning him to the lowest level on the Retention Register and eventually separating him through a reduction in force, an arbitrary action in violation of plaintiff's rights; (2) did plaintiff exhaust his administrative remedies?

The Renegotiation Act, supra, clearly shows that plaintiff was employed subject to the Classification Act of 1949, 63 Stat. 954, 972.

Section 1104 of the Classification Act, supra, provides:

"Nothing in this Act shall be construed to affect the application to officers and employees to whom this Act applies of the veteran-preference provisions in the Civil Service Act, as amended, and the Veterans' Preference Act of 1944, as amended." 5 U.S.C.A. § 1075.

Therefore, it is clear that since plaintiff's employment was subject to the Classification Act of 1949, he was entitled to veterans' preference.

Section 2 of the Veterans' Preference Act of 1944, 58 Stat. 387, provides in pertinent part:

"In certification for appointment, in appointment, in reinstatement, in reemployment, and in retention in civilian positions in all establishments, agencies, bureaus, administrations, projects, and departments of the Government, permanent or temporary, and in either (a) the classified civil service; (b) the unclassified civil service; (c) any temporary or emergency establishment * * *, preference shall be given to * * * (4) those ex-servicemen * * * who have served on active duty * * * and have been separated therefrom under honorable conditions." 5 U.S.C.A. § 851.

Thus the situation is this: Plaintiff must have been qualified for conversion to civil service status. Otherwise, Mr. Johnston, the Director of the Division, could not have converted plaintiff even had he signed the blank resignation. Consequently, we must assume that plaintiff was qualified for conversion, and we can see no reason why plaintiff's blank resignation should have been required. Had he signed such a resignation and was at some time discharged as a result thereof, we think some court would without hesitation order his restoration on the theory that the resignation was coerced. At any rate, such a restoration would seem to be a fair and just result.

Had the agency director not recommended plaintiff for conversion to status because he felt he did not possess the necessary qualifications or was inferior to other employees, we would say he was entirely correct and within his rights. However, the refusal to convert plaintiff, based upon his failure to sign the blank resignation, appears to us to be an act designed to remove plaintiff, and as such was arbitrary, capricious and in violation of plaintiff's rights. In other words, if his failure to sign the resignation in blank was the only reason why plaintiff was not converted to status, and it appears to be the sole reason, the agency was in error in not so doing. We say this because it has always been the congressional policy to grant veterans a preference in obtaining and keeping Government employment. Flanagan v. Young, 97 U.S.App.D.C. 119, 228 F.2d 466.

Under these circumstances, the only possible bar to plaintiff's recovery would

be either his failure to exhaust his administrative remedy or lack of proof that some non-veteran with less retention rights was retained when plaintiff was removed by the reduction in force action.

■ Turning first to the question of plaintiff's failure to exhaust his administrative remedy, the defendant contends that plaintiff should have further appealed the decision of the Second Civil Service Region. In this respect, we think the Second Civil Service Region was correct when it decided that "Neither the Veterans' Preference Act of 1944 nor any other authority provides for an appeal to the Civil Service Commission when an agency elects not to recommend an employee for conversion under this regulation." Civil Service Regulation 3.101 deals with acquisition of competitive status and provides for its acquisition only upon recommendation by the employing agency, which recommendation must be approved by the Civil Service Commission. The only appeal provided for in the regulations is in subparagraph (f) which provides that where the Civil Service Commission disapproves an employing agency's recommendation that one of its employees have competitive status, the employing agency or the employee may request the Civil Service Commission to review its action of disapproval within six months of such disapproval. This was not the situation presented in the case at bar. We can find no law or regulation which would either require or give right to an appeal under these circumstances and apparently the Second Civil Service Region also could find none. Therefore, we conclude that plaintiff has not failed to exhaust any available administrative remedy.

The question then is what non-veteran with less retention rights was retained in preference to plaintiff.

Had plaintiff been converted to status as we believe he could and should have been, he would have occupied a place in Group 1–A on the Retention Register. 5 CFR 20.4(c) [1]. As a Group 1–A employee plaintiff was entitled to preference over the employees in Group 1–B and the one employee in Group 2–A. 5 CFR 20.4, supra.

■ In conclusion, if the employing agency had exercised its discretion properly, this court could do nothing. If the employing agency abused its discretion in refusing to recommend status for plaintiff, this court can render judgment for plaintiff. And while the court will not normally review discretionary acts of the Government agency, it will do so if they are arbitrary. Crocker v. United States, 127 F.Supp. 568, 130 Ct.Cl. 567.

Since the agency director refused to recommend plaintiff for status, we think this refusal was an abuse of discretion on the part of the agency director which amounted to arbitrary action and plaintiff is entitled to recover the salary lost from the date of his dismissal to date of judgment, less any outside earnings. Judgment will be entered to this effect. The amount of recovery will be determined pursuant to Rule 38(c) of the Rules of this court, 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and DURFEE, and MADDEN, Judges, concur.

WHITAKER, Judge, took no part in the consideration and decision of this case.

---

1. Within each tenure group, employees entitled to veterans' preference are in subgroup "A" and others in subgroup "B". 5 CFR 20.4(c) (4).