## LEWIS, EXECUTRIX OF LEWIS, v. UNITED STATES.

### APPEAL FROM THE COURT OF CLAIMS.

No. 197. Submitted April 23, 1917.—Decided May 21, 1917..

The clause in the Sundry Civil Appropriation Act of March 4, 1909, c. 299, 35 Stat. 945, 987, appropriating money to enable the Secretary of the Interior to complete unfinished work pertaining to surveys in Louisiana and other States "caused by the discontinuance of the offices of surveyors-general in those States," abolished the office of surveyor general in Louisiana, repealing by necessary implication § 2207 of the Revised Statutes creating that office.

In determining the effect of the later enactment it must be assumed that Congress was familiar with action whereby the Interior Department had already undertaken to terminate the office, which the act recognizes as discontinued.

In view of § 1765, Rev. Stats., which fixes the compensation of federal officers at the salaries established by law with only such additional compensation as is by law authorized and explicitly appropriated, the surveyor general of Louisiana was not entitled to the fees for furnishing copies of plats and transcripts of records which the Act of March 3, 1831, § 5, c. 116, 4 Stat. 492, required him to collect but did not undertake to dispose of.

50 Ct. Cls. 226, affirmed.

THIS suit was instituted by James. Lewis, and revived upon his death by Josephine B. Lewis, as executrix, to recover the sum of $2,000 salary claimed to be due him from the United States as surveyor general of Louisiana for the fiscal year beginning July 1, 1909, and ending June 30, 1910, and to recover the further sum of $2,287.80 claimed to belong to him as perquisites of this office and paid over his protest into the Treasury of the United States between May 1, 1907, and June 30, 1909, at the direction of his superior officer, the Commissioner of the General Land Office, a total of $4,287.80, for which he prayed judg-

·ment. The Court of Claims found for the United States on both items and dismissed claimant's petition (50 Ct. Cls. 226), and it is from this judgment that the appeal has been taken to this court.

From the findings of fact made by the Court of Claims, the following appears: On or about January 18, 1905, James Lewis, who had previously held the office, was reappointed and recommissioned surveyor general of Louisiana, and under this commission he administered the duties of the office continuously until July 15, 1909, on which date he was deprived of the possession and custody of the records and other property of the office by John H. Batchelor, a clerk detailed from the General Land Office of the United States and acting under directions from the Commissioner of the General Land Office, as will hereafter more fully appear.

On December 7, 1908, Lewis received a letter from the Commissioner of the General Land Office dated December 5, 1908, in which the Commissioner informed him that it was proposed to discontinue the office of surveyor general for the district of Louisiana on June 30, 1909, and on or about May 13, 1909, he received a letter from the Commissioner, dated May 11, 1909, reading in part as follows:

"As the office of the surveyor general of Louisiana will be permanently closed and discontinued on July 1, 1909, the records thereof, excepting such as may be required for use in this office, will be turned over to the State of Louisiana when proper provision has been made by the legislature for their safe-keeping and providing for free access to them by the authorities of the United States, as provided by §§ 2218, 2220, and 2221, Revised Statutes.

"As no provision has been made by the legislature for the reception of the records under the conditions above stated, it will become necessary to appoint a custodian of them on July 1, at a salary of $1,000 per annum, who will

retain them in his custody until the required law has been provided. . . ."

On or about June 19, 1909, Lewis received from the Commissioner a letter, as follows:

"As you have been verbally informed that Congress omitted to include an appropriation for the maintenance of your office, you are aware that it will be necessary to discontinue it after June 30 next.

"You are now advised that Mr. John H. Batchelor, of this office, has been detailed to visit your office and supervise the transfer of its records to the State building at Baton Rouge, La.; also to select such of the records and Government property as it is thought best should be moved to this city for use in this office. You are directed to furnish him all facilities for carrying out this purpose and give him such assistance as he may need.

"It is assumed that you have already prepared an inventory of the records and property, which will be verified by Mr. Batchelor.

"The State authorities having failed to provide by legislation for the custody and care of the records which by law are to be turned over to them, it will be necessary, pending the enactment of suitable provision for a place for the records, to give the same in charge of a custodian. Mr. Arthur Gascon, of your office, has been selected for this office, and he will receipt to Mr. Batchelor for the records by schedule.

"Property which is not a part of the records, such as furniture not belonging to the Treasury Department, and stationery, including surveying instruments, drafting instruments, etc., will be examined by Mr. Batchelor, and that which is serviceable and can be transported profitably to this city will be boxed up for transmission. The remainder will be stored and advertised for sale at auction, either under Mr. Gascon or other officer, or turned over to the local land office.

"Mr. Gascon will be instructed separately."

Pursuant to the plan outlined in this letter, on June 19, 1909, Batchelor, a clerk detailed from the General Land Office, acting under instructions from the Commissioner, dated June 17, 1909, arrived at the surveyor general's office in New Orleans, La., and assumed supervision of the closing of that office and the disposition of the records and other property therein, caused inventories of said records and other property to be made, and, on July 15, 1909, the same having been completed, took said records and property out of the possession and custody of Lewis and gave to him a formal receipt therefor. Thereafter, on the same day, Batchelor, acting under his instructions, turned over the records and other property of the office to Arthur Gascon, formerly chief clerk in the office of the surveyor general, as custodian thereof, Gascon having been appointed custodian thereof by the Secretary of the Interior on June 16, 1909, to take effect July 1, 1909, the appointment being in the following language:

"Arthur Gascon, of Louisiana, is hereby appointed custodian of the documents and records pertaining to the office of the surveyor general of Louisiana upon the discontinuance of that office, at a salary of $1,000 per annum, to take effect upon July 1, 1909.

"Salary payable from the appropriation for completing field notes, etc., of surveys in Minnesota, North Dakota, and Louisiana.

"By transfer from chief clerk, office of surveyor general of Louisiana."

On January 9, 1915, the President issued the following order:

"The Secretary of the Interior.

"Sir: The action of the Interior Department in discontinuing the office of the United States surveyor general for the district of Louisiana from and after June 30, 1909, as shown by the letters of the Commissioner of the Gen-

eral Land Office to James Lewis, surveyor general of Louisiana, dated December 5, 1908, and May 11, 1909, and the appointment by the Secretary of the Interior, under date of June 16, 1909, of Arthur Gascon as custodian of the records of the office of the surveyor general of Louisiana, to take effect July 1, 1909, copies of which letters and appointment are hereto attached, is hereby ratified and confirmed.

"WOODROW WILSON, President."

The records of the surveying district of Louisiana were not completed on June 30, 1909, or on July 15, 1909, and the State of Louisiana did not provide by law for the reception and safe-keeping as public records of the field notes, maps, records, and other papers appertaining to land titles in said State, which belonged to the office of United States Surveyor General of Louisiana, and for the free access to the same of the authorities of the United States, until June 10, 1910, on which day the Governor of the State approved an act of the general assembly known as Act No. 6 of the Session Acts of the General Assembly of the State of Louisiana for the year 1910, and passed for that purpose. Acting under authority which was vested in him for that purpose by this act of the General Assembly, Fred J. Grace, register of the state land office of Louisiana, on June 30, 1910, formally receipted to Gascon, custodian as aforesaid for the records of the United States Surveyor General's office of Louisiana, for the plats, field notes, books, papers, etc., constituting the records of said office, and on that day Gascon, for and in behalf of the United States, formally delivered the said records to the State of Louisiana in the person of its duly authorized representative, Fred J. Grace.

For the period beginning July 1, 1909, and ending June 30, 1910, both inclusive, Lewis received no salary or compensation from the United States as surveyor general of Louisiana.

During Lewis' period of service as surveyor general of Louisiana he furnished copies of plats of surveys and transcripts from the records of his office to various individuals requiring them, and asked and received therefor from such individuals fees, as compensation for the service rendered in furnishing such copies and transcripts, in amounts equal to or less than those authorized in said § 5 of the Act of Congress approved March 3, 1831, 4 Stat. 492, entitled "An act to create the office of surveyor of the public lands for the state of Louisiana." Some of such copies and transcripts were certified by him under the seal of his office, and for such certifications he received from the individuals requiring the same fees at the rate of $1 for each certificate and seal. From the time Lewis assumed the authority, powers and duties of his office up to and including April 30, 1907, he retained as his personal property the fees received by him, construing said § 5 of the Act of March 3, 1831, as conferring upon him this right, in addition to and separate from his salary as surveyor general.

From the time the office of surveyor general for Louisiana was established up to the time Lewis last entered upon its duties, the incumbents of the office rendered similar services to individuals and received and retained fees for such services as their personal property, and in this construction of the Act of March 3, 1831, up to and including April 30, 1907, the Commissioner of the General Land Office and the Secretary of the Interior acquiesced.

Upon April 15, 1907, the Commissioner of the General Land Office issued a circular order to Lewis, requiring him to desist from retaining these fees as his personal property, and requiring him, when application should be made by individuals for exemplified copies of plats or other records in his office, to first furnish the applicant with a memorandum of the exact cost thereof at the rates

established by law for registers and receivers for like serv-ices, and to require said applicant to deposit the amount indicated in a United States depository to the credit of the Treasurer of the United States, and directing Lewis, after that should have been done, to furnish the copies and transcripts ordered.

Lewis protested against this order in a letter to the Commissioner dated May 3, 1907, in which he informed the Commissioner that his office had hitherto based its charges for copies from its records upon § 5 of the Act of March 3, 1831; that the rates established by law for regis-ters and receivers for furnishing such copies were not appli-cable to his office; and that the fees for furnishing such copies had been construed by the surveyor general of Louisiana as perquisites allowed to him, as appeared from the correspondence of his office with the General Land Office as far back as 1860. To this letter the Commissioner replied, on May 9, 1907, that the Act of March 3, 1831, be-ing unrepealed, Lewis should continue to charge the fees established under the act, to the extent of which direction the circular order of April 15, 1907, stood modified as far as Lewis' office was concerned, but that all fees of what-ever nature received from parties desiring copies of the records must be covered into the Treasury, and the prac-tice of receiving them as personal property be discontinued.

Upon receipt of this letter, Lewis addressed a second letter of protest to the Commissioner. The Commissioner replied, on May 31, 1907, that his order of April 15, 1907, was considered to be in the interest of good administra-tion and must be strictly observed.

Under this order of April 15, 1907, there was deposited in the United States subtreasury at New Orleans, by individuals in payment for copies furnished by the sur-veyor general's office from May 1, 1907, to June 30, 1909, inclusive, the sum of $635.65.

On October 19, 1907, the Commissioner issued to Lewis

a further circular order relative to these fees, modifying the circular order of April 15, 1907, and requiring him thereafter, when application should be made to him by individuals for exemplified copies of plats or other records in his office, to first furnish the applicant with a memorandum of the exact cost thereof, to require the applicant to pay such cost to him, as surveyor general, and upon receipt of the amount to prepare the copies desired, and to deposit the aggregate amount thus received each week to the credit of the Treasurer of the United States on account of "Receipts for furnishing copies of records," and to forward the duplicate certificates of deposit to the office of said Commissioner in Washington.

Upon receipt of this circular order, Lewis wrote another letter of protest to the Commissioner.

Under the circular order of October 19, 1907, Lewis deposited in the United States subtreasury at New Orleans, to the credit of the Treasurer of the United States, between May 1, 1907, and June 30, 1909, inclusive, the sum of $1,652.15, received by him as fees from individuals.

The sums deposited by individuals or by Lewis, from May 1, 1907, to June 30, 1909, inclusive, aggregate the sum of $2,287.80, no part of which has ever been received by Lewis from the United States.

*Mr. L. Russell Alden* and *Mr. Edward F. Colladay* for appellant.

*Mr. Assistant Attorney General Thompson* for the United States.

MR. JUSTICE DAY, after making the foregoing statement, delivered the opinion of the court.

Section 2207 of the Revised Statutes provided for the appointment of a surveyor general for the surveying dis-

trict of Louisiana; § 2208 fixed his salary at the sum of $2,000 a year; § 2217 fixed the term of office at four years from the date of the commission unless the incumbent should resign, die or be removed from office within that period.

The claimant insists that Lewis was entitled to the salary of the office for the year ending June 10, 1910, notwithstanding the facts found by the Court of Claims as to the discontinuance of the office, as it was not until that date that the State of Louisiana duly provided for the reception and safe-keeping of the papers and records of the office, which were delivered by the custodian to the State on June 30, 1910.

Sections 2218, 2219, 2221 and 2222 of the Revised Statutes provide as follows:

"2218. The Secretary of the Interior shall take all the necessary measures for the completion of the surveys in the several surveying-districts for which surveyors-general have been, or may be, appointed, at the earliest periods compatible with the purposes contemplated by law; and whenever the surveys and records of any such district are completed, the surveyor-general thereof shall be required to deliver over to the secretary of state of the respective States, including such surveys, or to such other officer as may be authorized to receive them, all the field-notes, maps, records, and other papers appertaining to land titles within the same; and the office of surveyor-general in every such district shall thereafter cease and be discontinued."

"2219. In all cases where, as provided in the preceding section, the field-notes, maps, records, and other papers appertaining to land titles in any State are turned over to the authorities of such State, the same authority, powers, and duties in relation to the survey, resurvey, or subdivision of the lands therein, and all matters and things connected therewith, as previously exercised by the surveyor-general, whose district included such State, shall

be vested in, and devolved upon, the Commissioner of the General Land-Office.":

"2221. The field-notes, maps, records, and other papers mentioned in section twenty-two hundred and nineteen, shall in no case be turned over to the authorities of any State, until such State has provided by law for the reception and safe-keeping of the same as public records, and for the allowance of free access to the same by the authorities of the United States."

"2222. Every surveyor-general, register, and receiver, except where the President sees cause otherwise to determine, is authorized to continue in the uninterrupted discharge of his regular official duties, after the day of expiration of his commission, and until a new commission is issued to him for the same office, or until the day when a successor enters upon the duties of such office; and the existing official bond of any officer so acting shall be deemed good and sufficient, and in force, until the date of the approval of a new bond to be given by him, if recommissioned, or otherwise, for the additional time he may so continue officially to act, pursuant to the authority of this section."

It is the contention of the Government that the action of the Secretary of the Interior with the approval of the President had the effect to discontinue the office as of July 1, 1909, and that in fact the office of surveyor general was discontinued after June 30, 1909. In the Sundry Civil Appropriation Act of March 4, 1909, 35 Stat. 945, 987, it was provided:

"To enable the Secretary of the Interior to complete the unfinished drafting and field-note writing pertaining to surveys in the States of Minnesota, North Dakota, and Louisiana, caused by the discontinuance of the offices of surveyors-general in those States, six thousand and five hundred dollars."

And in the appropriation bill for that year Congress

made no provision, such as had been customary in former years, for salaries of these officials.

The Court of Claims held that this act was effectual to abolish the office of surveyor general for Louisiana. We deem that a correct conclusion. It is true that repeals by implication are not favored. The repugnancy between the later act upon the same subject and the former legislation must be such that the first act cannot stand and be capable of execution consistently with the terms of the later enactment. As we view it, such conflict does appear in this instance.

It must be assumed that Congress was familiar with the action of the executive department undertaking to terminate the office, and when Congress acted upon the assumption that the office was abolished and provided for the unfinished work pertaining to the surveys, "caused by the discontinuance" of the office, such action was tantamount to a direct repeal of the act creating the office and had the effect to abolish it.

As to the part of Lewis' claim which is for fees, it is alleged in his petition, and found to be a fact by the Court of Claims, that during the entire period of his service as surveyor general he furnished copies of plats of surveys and transcripts from the records of his office to various individuals requiring them, receiving therefor compensation as authorized by § 5 of the Act of Congress of March 3, 1831, 4 Stat. 492, which is as follows:

"The surveyor general . . . . shall be allowed an annual salary of two thousand dollars . . . and that the fees heretofore authorized by law for examining and recording surveys be, and the same are hereby, abolished; . . . and for every copy of a plat of survey, there shall be paid twenty-five cents, and for any transcript from the records of said office, there shall be paid at the rate of twenty-five cents for every hundred words by the individuals requiring the same."

It had been the custom of Lewis and his predecessors in office to retain these fees as their personal property, but by virtue of an order from the Commissioner of the General Land Office, the amounts realized from these fees between May 1, 1907, and June 30, 1909, being $2,287.80, were paid into the Treasury of the United States. It is appellant's contention that this amount is now due and owing Lewis' estate, under the terms of § 5 of the Act of March 3, 1831, above quoted, interpreted in the light of established custom.

Section 1765 of the Revised Statutes provides:

"No officer in any branch of the public service, or any other person whose salary, pay, or emoluments are fixed by law or regulations, shall receive any additional pay, extra allowance, or compensation, in any form whatever, for the disbursement of public money, or for any other service or duty whatever, unless the same is authorized by law, and the appropriation therefor explicitly states that it is for such additional pay, extra allowance, or compensation." Claimant contends that this section shows no intention to interfere with the enjoyment of any emoluments already fixed by law, as the additional compensation, the receipt of which it prohibits, is compensation additional to "salary, pay, or emoluments . . . fixed by law or regulations." To establish that these fees were emoluments fixed by law, the claimant points to the Act of April 21, 1806, 2 Stat. 391, by § 9 of which it is provided: "The surveyor of the public lands, south of Tennessee, be, and he is hereby directed to appoint a principal deputy for each of the two land districts of the territory of Orleans . . . And each of the said principal deputies shall receive an annual compensation of five hundred dollars, and in addition thereto, the following fees, that is to say: for examining and recording the surveys executed by any of the deputies, at the rate of twenty-five cents for every mile of the boundary line of

such survey; and for a certified copy of any plot of a survey in the office, twenty-five cents."

This read in connection with the Act of March 3, 1831, is the foundation of this claim. The Act of 1831 provides that the surveyor general of the State of Louisiana shall have the same authority, and perform the same duties, as are vested in and required of the surveyor of the lands of the United States, south of the State of Tennessee, or of the principal deputy surveyors in the said State.

We are of opinion that § 1765 of the Revised Statutes, above quoted, prevents the allowance of the claim for fees. This section is general in its application, and fixes the compensation of officers of the United States at the salary established by law, unless the additional compensation is authorized and explicitly appropriated for. No such law or appropriation is shown in this case. The Act of March 3, 1831, made no disposition of the fees. After May, 1907, the Department required them to be paid into the Treasury. The Court of Claims correctly ruled that § 1765 controlled this part of the claim of appellant.

*Judgment affirmed.*

MR. JUSTICE McREYNOLDS took no part in the consideration and decision of this case.