August 6, 1979

**79-58    MEMORANDUM OPINION FOR THE ACTING
ASSISTANT ATTORNEY GENERAL, CIVIL
DIVISION**

**Renegotiation Board—Reporting Requirement
(50 U.S.C. App. § 1215)—Effect of Absence of an
Appropriation—Repeals by Implication**

You ask whether contractors must continue to file financial reports with the Renegotiation Board in light of the absence of an appropriation for the Board. It appears that the situation giving rise to the question results from Congress' failure to make an appropriation for the Renegotiation Board without expressly repealing the Renegotiation Act, 50 U.S.C. App. § 1191 *et seq.* (1976). You note that, pursuant to 50 U.S.C. App. § 1215(e) (1976), contractors holding contracts or subcontracts subject to the Renegotiation Act must periodically file financial reports with the Renegotiation Board. Further, you state that a willful failure to file such a report constitutes a criminal offense, and that because of this contractors continue to mail financial reports to a nonexistent Board. The General Services Administration is holding the reports.

Based on the above you have asked whether the financial reporting requirements of 50 U.S.C. App. § 1191(c)(5)(A) (1976) are suspended or terminated. We believe that there is no requirement for the continued filing of the reports.

The Renegotiation Act of 1951, 65 Stat. 7, was enacted to eliminate excessive profits in contracts by which the United States procures property, processes, services, and the construction of facilities necessary for the national defense. The Renegotiation Board, following statutory guidelines, was to determine whether contracts subject to the Act resulted in excessive profits. 50 U.S.C. App. § 1217 (1976). The provisions of the Act applied only to receipts and accruals, under covered contracts, which were attributable to performance on or before September 30, 1976. 50 U.S.C. App. § 1212(c)(1) (1976).

Public Law No. 95–431, 95 Stat. 1043 (1978), the 1979 Appropriations Act for the Departments of State, Justice, Commerce, and others, provides that:

> For necessary expenses of the Renegotiation Board, including termination or cessation of the activities of the Board, and including hire of passenger motor vehicles and services as authorized by 5 U.S.C. 3109, $5,260,000, to be available only until March 31, 1979: *Provided,* That all property (including records) of the Board shall be transferred to the Administrator, General Services Administration, upon cessation of the Board's activities, or on March 31, 1979, whichever first occurs.

This provision was explained in the Senate report as follows:

> Contractors' liability to report their receipts and accruals to the Renegotiation Board under the Renegotiation Act of 1951 expired on September 30, 1976 [*see* 50 U.S.C. App. § 1212(c)(1) ] and has not yet been extended beyond that date * * * .
>
> As a result of extensive hearings the Committee has concluded that the Board is not effective and by its emphasis on profits it is not an incentive to reducing costs. The appropriation recommended by the Committee is for the Board's activities during the period October 1, 1978 through May 31, 1979[1] to allow the Board sufficient time to close its offices, transfer its property and records to the General Services Administration, and provide for the orderly termination of activities, including the payment of terminal leave and severance pay to eligible employees. [Senate Rept. 1043, 95th Cong., 2d sess. 80–81 (1978).]

The House report likewise expressed dissatisfaction with certain of the Board's actions and made clear its intention that the Board's activities be completed prior to March 31, 1979, and thereafter cease (H. Rept. 1253, 95th Cong., 2d sess. 50–51 (1978) ). The House report further deemed it appropriate to consider termination of the Board in light of Congress' failure to extend the Renegotiation Act after its September 30, 1976 expiration. *Id.* at 50.

We believe that Congress, by implication, repealed the Act and thus eliminated the Act's reporting requirements. In *Lewis* v. *United States*, 244 U.S. 134 (1917), the Court considered the effect of Congress' failure to appropriate for a particular Government office while augmenting the appropriation of the Interior Department for the Secretary of the Interior to finish the work "caused by the discontinuance" of the office. The Court stated:

> It is true that repeals by implication are not favored. The repugnancy between the later act upon the same subject and the formal legislation must be such that the first act cannot stand

---

[1]The Senate later receded to the House's proposed March 31, 1979, termination date.

and be capable of execution consistently with the terms of the later enactment. As we view it, such conflict does appear in this instance.

It must be assumed that Congress was familiar with the action of the executive department undertaking to terminate the office and when Congress acted upon the assumption that the office was abolished and provided for the unfinished work * * * "caused by the discontinuance" of the office, such action was tantamount to a direct repeal of the act creating the office and had the effect to abolish it. [*Id.* at 144.]

We think that this principle applies here.[2] The Act is not capable of execution in light of the Board's abolition.

In this connection, it should be noted that since Congress intended to eliminate the Board's functions it follows that the reporting requirements under the Renegotiation Act were intended to cease with the Board's termination. This is for the simple reason that the reporting requirements were merely to assist the Board in carrying out its functions. Since those functions no longer exist, reporting would accomplish nothing.

LEON ULMAN
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[2]Here, as in *Lewis* v. *United States*, Congress acted through an appropriation measure. Thus, *Lewis* also stands for the proposition that Congress may repeal substantive laws by way of an appropriation provision. *See also, City of Los Angeles* v. *Adams,* 556 F. (2d) 40 (D.C. Cir. 1977).