Randy BRAME, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 58–84C.

United States Claims Court.

June 30, 1986.

purposes. *See Cabot Corporation v. United States,* 788 F.2d 1539 (Fed.Cir.1986).

Martin Green, Washington, D.C., for plaintiff.

Thomas W. Petersen, Washington, D.C., with whom was Acting Asst. Atty. Gen. Richard K. Willard, for defendant. Robert K. Loesche, of counsel.

## OPINION

MOODY R. TIDWELL, III, Judge:

This is a civilian pay case which comes before this court on Cross-Motions for Summary Judgment. Plaintiff brought this suit pursuant to 28 U.S.C. § 1491 (1982), alleging that he was improperly removed from his position as a custodial employee/messenger on the rolls of the United States Court of Claims. Plaintiff seeks backpay, reinstatement to his job or to a comparable job, costs and attorneys fees. After a careful review of the pleadings, the submitted papers and the parties' briefs, the court concludes that defendant is entitled to judgment as a matter of law.

## FACTS

Plaintiff, Mr. Randy Brame, began his employment with the United States Court of Claims on January 5, 1976. Plaintiff's first assignment was to work as a custodial employee/messenger on the personal staff of a judge in the appellate division of that court. Except for a short period from October 1978, to May 1979, when plaintiff worked as one of the deputy clerks in the office of the Clerk of the Court of Claims, plaintiff held the position of custodial employee/messenger from the inception of his employment in 1976, until the United States Court of Claims ceased to exist on September 30, 1982. During the time period in question and while employed by the United States Court of Claims, plaintiff became a member of the United States Army Reserve and began eight weeks of basic training on July 17, 1981. From June 7, 1982, to September 3, 1982, plaintiff was on active duty with the Army Reserve. Approximately one month after his return from active duty the court was abolished along with his and all other positions.

On April 2, 1982, the Federal Courts Improvement Act of 1982 (FCIA) was enacted. 28 U.S.C. § 171, *et seq.* The FCIA provided that the United States Court of Claims would cease to exist on September 30, 1982, and the next day, October 1, 1982, the United States Court of Appeals for the Federal Circuit and the United States Claims Court would come into existence.[1]

Prior to the effective date of the FCIA, plaintiff learned that his name was one of three not included on a list of United States Court of Claims employees who would be appointed to a position on the United States Court of Appeals for the Federal Circuit. During normal working hours on September 30, 1982, the Clerk of the United States Court of Claims advised plaintiff that, effective the following day, he would no longer be employed by the court because the appellate division of the United States Court of Claims (the soon to be created United States Court of Appeals for the Federal Circuit) had decided to abolish plaintiff's position as soon as it became a separate court, and not to appoint Mr. Brame to any other position.

---

1. The United States Court of Customs and Patent Appeals was simultaneously abolished and its duties and responsibilities assumed by the United States Court of Appeals for the Federal Circuit. The judges of the United States Court of Customs and Patent Appeals and the appellate division of the United States Court of Claims were made judges of the United States Court of Appeals for the Federal Circuit. The trial judges of the United States Court of Claims became judges of the United States Claims Court.

It should be understood that in planning the creation of the two new courts, those positions that were assigned to the appellate division of the United States Court of Claims would be assumed by the United States Court of Appeals for the Federal Circuit. All other positions would be assigned to the United States Claims Court. Since plaintiff's position was assigned to the appellate division of the United States Court of Claims, his position would be assumed by the United States Court of Appeals for the Federal Circuit.

On October 1, 1982, the United States Court of Claims was abolished, including all of its positions, with the exception of the judges. The United States Court of Appeals for the Federal Circuit was simultaneously created, as was the United States Claims Court. All of the support positions on both new courts were vacant and remained so until people were identified to fill them and the necessary personnel actions taken to appoint those people to the vacant positions.

On February 8, 1984, plaintiff filed his original Complaint with this court, *pro se*, alleging that he had been improperly "fired" from his position. Subsequently, on February 29, 1984, plaintiff, through counsel, filed an Amended Complaint alleging that he had been improperly removed from his position as a custodial employee/messenger with the United States Court of Claims. In Count I of his Amended Complaint, plaintiff contended that he was not removed in accordance with 28 U.S.C. § 795 (1976) and that the abolition of the Court of Claims was not a legal basis for divesting him of his job. In Count II, plaintiff contended that his dismissal was in violation of 38 U.S.C. § 2021(b)(3) (1982) which guaranteed him full employment rights notwithstanding any conflicting obligations or time away from work while serving as a member of the Armed Forces Reserve. Defendant argued that plaintiff

was not removed from his position, but that plaintiff's position was abolished along with the Court of Claims on September 30, 1982, pursuant to the FCIA; that plaintiff was not appointed to a new position; and that plaintiff was not legally entitled to such an appointment. In addition, defendant contended that plaintiff's non-selection for a new federal position after October 1, 1982, was not in violation of 38 U.S.C. § 2021(b)(3) (1982). Consequently, defendant maintains that plaintiff has no cognizable claim under the Tucker Act, 28 U.S.C. § 1491 (1982), upon which relief can be granted.

## DISCUSSION

Summary judgment is appropriate only where there are no issues of material fact in dispute and judgment is appropriate as a matter of law. *South Louisiana Grain Services, Inc. v. United States,* 1 Cl.Ct. 281, 289 (1982). After a careful examination of the pleadings and the submitted papers, the court concludes that there are indeed no genuine issues of material fact in dispute and that this action is ripe for summary judgment.

### I. *Plaintiff's Claim Under 28 U.S.C. § 795*

Before the enactment of the FCIA, 28 U.S.C. § 795 read as follows:

The Court of Claims may appoint a bailiff and a messenger who shall be subject to removal by the court.

The bailiff shall attend the court, preserve order, and perform such other necessary duties as the court directs.

28 U.S.C. § 795 (1976).[2]

Plaintiff contends that he was not removed from his position as custodial employee/messenger in accordance with 28 U.S.C. § 795 because he was not removed "by the court." Since he was not removed "by the court" on or before September 30,

---

**2.** 28 U.S.C. § 795, as amended in 1982 reads:
The chief judge of the United States Claims Court, with the approval of the court, may appoint necessary bailiffs and messengers, in such numbers as the Director of the Administrative Office of the United States Courts may approve, each of whom shall be subject to removal by the chief judge, with the approval of the court.

1982, he automatically became an employee of one of the new courts effective October 1, 1982, and remains an employee until this day. It is not significant, however, whether plaintiff was considered to be employed by the Court of Claims on September 30, 1982, because it is clear that plaintiff's position was abolished at the moment the Court of Claims was abolished under the FCIA. This was true of all positions in the Court of Claims and not just plaintiff's position.

■■■■■ This court is of the opinion that "the repeal of a law creating an office abolishes the office." *Abt v. United States*, 146 Ct.Cl. 205, 210, *cert. dismissed*, 361 U.S. 871, 80 S.Ct. 136, 4 L.Ed.2d 111 (1959). *See also Lewis v. United States*, 244 U.S. 134, 37 S.Ct. 570, 61 L.Ed. 1039 (1917). In *Abt v. United States*, 146 Ct.Cl. 205, *cert. dismissed*, 361 U.S. 871, 80 S.Ct. 136, 4 L.Ed.2d 111 (1959), an Army officer sought to recover increased active duty pay on the ground that his pay should reflect, as a longevity factor, a period of inactive duty time. However, the Court of Claims held that plaintiff was not entitled to longevity credit because the law under which he held his commission as a captain in the United States Army was repealed at a later date which "operated to terminate on that date the plaintiff's appointment as captain in the Army of the United States." *Id.* at 210. The Court of Claims further held that the repeal of a law creating an office abolishes that office unless its existence is saved by some other legal provision after the repeal of the law which created or authorized it. *Id.* at 210. In the instant case, the enactment of the FCIA repealed the law which created the United States Court of Claims and all personnel positions, including plaintiff's. The only exception provided in the FCIA was for the judicial positions which were retained under the Act. This is a clear indication of the Congressional understanding and intent that all other appointments were not to survive. *Abt v. United States*, 146 Ct.Cl. 205, 210–

11, *cert. dismissed*, 361 U.S. 871, 80 S.Ct. 136, 4 L.Ed.2d 111 (1959).

Mr. Brame, and others similarly situated, may only enjoy a federal position if properly appointed to it. Thus, the judges and other appointing officers of the two new courts by necessity had to go through the exercise of formally selecting persons for positions in the new courts and then actually appointing those selected to the new positions. The staffing of the new courts was not merely a continuation of former positions or simply a ministerial act as plaintiff contends. Rather, it involved the actual creation of new positions, since the former positions had been abolished, and the filling of those positions. In this matter both courts had great discretion, and within reason, the appointing officers could appoint any qualified person to any appropriate position. They could also elect not to appoint any person if, in their judgment, that individual was not qualified. Here the United States Court of Appeals for the Federal Circuit chose not to create the position formerly held by plaintiff which was abolished by operation of law on September 30, 1982, and not to offer him employment in any other position. Defendant is correct in its analysis of the case as a whole, "this is not a 'termination' case; it is an 'appointment' case." It may well be true that few of the appointing officers looked beyond the staff of the former courts when seeking candidates for the new positions, but the filling of these new positions was required by operation of law to be a discretionary activity. *Keim v. United States*, 177 U.S. 290, 293, 20 S.Ct. 574, 575, 44 L.Ed. 774 (1900); *see also Goutos v. United States*, 212 Ct.Cl. 95, 552 F.2d 922 (1976). There is no other way that plaintiff could have obtained employment in either of the newly created courts.[3]

Plaintiff's claim that he was the only person not given a new position on October 1, 1982, even if true, is irrelevant because the court had discretion to choose which positions to create and each appointing offi-

---

**3.** The appointing authority is a judge, if the individual is to be employed within the chambers of that judge, and the clerk of the court for all other positions. 28 U.S.C. § 791 and § 794.

cer had discretion to decide who to select for those positions. It would not have been unlawful if plaintiff had in fact been the only employee of the former courts not selected for subsequent employment.[4]

Plaintiff's claim that his "termination" constitutes a violation of 28 U.S.C. § 795 is totally without merit regardless of the hollow arguments put forth by counsel in support of the claim. Plaintiff's position under section 795 of Title 28 of the Code, both before and, as amended, after October 1, 1982, is that as a "messenger" he could only be removed by the court, 28 U.S.C. § 795 (1976), or the chief judge of the United States Claims Court with the approval of the court. 28 U.S.C. § 795 (1982). This was not done and need not have been done for the reasons set forth above. To carry this argument to its most illogical extreme, the Congress of the United States is to blame. Congress enacted the FCIA which abolished the United States Court of Claims and all of its personnel positions, including plaintiff's, leaving the two new courts with the responsibility of filling those positions as they saw fit, within reason and subject to the approval of the Director of the Administrative Office of the United States Courts. Moreover, 28 U.S.C. § 795 (1982), is applicable only to the chief judge of the United States Claims Court. If plaintiff was to be automatically appointed to any position it would have been on the United States Court of Appeals for the Federal Circuit. The chief judge of the United States Claims Court could not appoint Mr. Brame to a messenger job, or for that matter, to any job on the United States Court of Appeals for the Federal Circuit.

▮ It is well established that the right to hold public employment is not a recognized fundamental right. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 2566, 49 L.Ed.2d 520 (1976). Federal employees do not have a constitutionally protected property interest in continued federal employ-

ment. *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15, *reh'g denied*, 417 U.S. 977, 94 S.Ct. 3187, 41 L.Ed.2d 1148 (1974). Moreover, federal employees' rights are not unlimited and extend no further than the limits of Federal law and the constitution. *Donovan v. United States*, 580 F.2d 1203, 1208 (3rd Cir.1978).

The Court of Claims in *Kirschner v. United States*, 172 Ct.Cl. 526 (1965), held that "[i]n the absence of a grant of rights by statute or regulation, federal employees may be summarily denied new employment or continued federal employment in a new agency." *Id.* at 530. This rule clearly defeats plaintiff's argument. Plaintiff has failed to identify a statute or regulation whereby he is entitled to a position with the United States Claims Court or the United States Court of Appeals for the Federal Circuit. Nor is plaintiff entitled to a position under equitable or contract principles because federal employment is a matter of legal status pursuant to statute and regulation and not a matter of contract or equity. *United States v. Hopkins*, 427 U.S. 123, 96 S.Ct. 2508, 49 L.Ed.2d 361 (1976).

## II. *Plaintiff's Claim Under 38 U.S.C. § 2021(b)(3)*

▮ Plaintiff also contends that the loss of his position violated 38 U.S.C. § 2021(b)(3) because he was discriminated against in that he "did not receive the same treatment afforded his co-workers." Section 2021(b)(3) reads as follows:

Any person who [is employed by the federal government, a state government, or a private employer] shall not be denied retention in employment or any promotion or other incident or advantage of employment because of any obligation as a member of a Reserve component of the Armed Forces.

38 U.S.C. § 2021(b)(3) (1982).

In support of his position, plaintiff cited the following excerpt from *Monroe v. Standard Oil Co.*, 452 U.S. 549, 101 S.Ct. 2510, 69 L.Ed.2d 226 (1981):

---

**4.** For the record, the court notes that two other individuals were not selected for employment by the United States Court of Appeals for the

Federal Circuit. Thus their appointments expired on September 30, 1982, just as did plaintiff's.

The legislative history thus indicates that § 2021(b)(3) was enacted for the significant but limited purpose of protecting the employee-reservist against discriminations like discharge and demotion, motivated solely by reserve status. Congress wished to provide protection to reservists comparable to that already protecting the regular veteran from 'discharge without cause'—to insure that employers would not penalize or rid themselves of returning reservists after a mere *pro forma* compliance with 2024(d). And the consistent focus of the administration that proposed the statute, and of the Congresses that considered it, was on the need to protect reservists from the temptation of employers to deny them the same treatment afforded their co-workers without military obligations. (footnote omitted).

*Id.* at 559–60, 101 S.Ct. at 2516–17.

Plaintiff suggests that his three-month absence from the United States Court of Claims and his return just four weeks prior to the dissolution of that court had a direct impact on his loss of employment at the United States Court of Claims. The court disagrees.

It is clear from the language of the statute, 38 U.S.C. § 2021(b)(3) (1982), that government employees shall not be discriminated against, by the denial of employment, promotion, or other incidental advantages of employment because of any obligation as a member of a Reserve component of the Armed Forces. The Supreme Court has stated that the limited purpose of 38 U.S.C. § 2021(b)(3) is to protect employee-reservists against discriminations like discharge and demotion, "motivated solely by reserve status." *Monroe v. Standard Oil Co.*, 452 U.S. 549, 559, 101 S.Ct. 2510, 2516, 69 L.Ed.2d 226 (1981). However, as defendant has shown, plaintiff was not "discharged" from his position, rather the position plaintiff occupied was abolished along with the United States Court of Claims and all of its support staff on September 30, 1982. Plaintiff has failed to show that the loss of his position or that his failure to obtain an appointment in the United States Court of Appeals for the Federal Circuit was "motivated solely by [his] reserve status." Indeed, plaintiff has not introduced any factual evidence of such a cause-and-effect relationship, but merely concludes that he "did not receive the same treatment afforded his co-workers." Accordingly, the court finds plaintiff's claim that he did not receive a new job "because of" his service in the Army Reserve to be totally without merit.

## CONCLUSION

After a careful review of the submitted papers, parties' briefs and the applicable laws, the court concludes that plaintiff's position with the United States Court of Claims was abolished at the time the United States Court of Claims was abolished pursuant to the Federal Courts Improvement Act, 28 U.S.C. 171, *et seq.*, and that plaintiff was not automatically entitled to appointment to either of the two new courts. Furthermore, the court concludes that plaintiff has failed to show that his failure to receive an appointment was in violation of 38 U.S.C. § 2021(b)(3) (1982). Plaintiff is not entitled to back pay or reinstatement.

Accordingly, the court grants Defendant's Cross-Motion for Summary Judgment and denies Plaintiff's Motion for Summary Judgment. The clerk of the court is directed to dismiss the Complaint. Costs to defendant.