# United States Court of Appeals
## For the First Circuit

No. 13-2277

IVÁN DÍAZ-CARRASQUILLO,

Plaintiff, Appellee,

v.

ALEJANDRO GARCÍA-PADILLA,
as Governor of the Commonwealth of Puerto Rico,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Torruella, Howard and Thompson,
Circuit Judges.

Margarita Mercado-Echegaray, Solicitor General, with whom Tanaira Padilla-Rodríguez, Deputy Solicitor General, were on brief, for appellant.
Jean Philip Gauthier Iñesta, with whom Jean Philip Gauthier Law Office was on brief, for appellee.

April 16, 2014

**HOWARD, Circuit Judge**.  This is an interlocutory appeal from a preliminary injunction issued in favor of plaintiff Iván Díaz-Carrasquillo, who sued the Governor of Puerto Rico and other officials for attempting to oust him from his job as the Advocate for Persons with Disabilities in August 2013.  The defendants argue that Díaz's job was abolished by a legislative act.  After review of the record and the relevant laws, we find that the injunction was improvidently granted and vacate the district court's order.[1]

## I.  Background

In 1985, the Puerto Rico Legislature passed Law 2, creating the Office of the Ombudsman for Persons with Disabilities. The Ombudsman was declared the "director or first executive officer" of the Office.  The Governor appointed the Ombudsman, set his salary, and could terminate him at will.  Law 2 was amended by Act 9 of 2002, noting that the Ombudsman, while still appointed by the Governor (with the Senate's advice and consent), would serve a ten-year term so as "not to be subject to the changes of public Administration that occur as part of the electoral process every four years."

In June 2011, the Legislature passed Reorganization Plan 1, which subsequently was signed into law by Governor Fortuño.  The

---

[1]Defendants have filed two motions for a stay of the district court's order during the pendency of this appeal.  We denied the first, without prejudice.  The second, currently pending, is mooted by this decision.

Plan repealed 1985 Law 2 and created an umbrella Administration for Advocate Offices under which were four "Advocates Offices" -- Disabilities, Health, Retirees and the Elderly, and Veterans. The Disabilities Advocate was appointed by the Governor with Senate advice and consent for a ten-year term, and could be removed only for malfeasance in office as determined by the Governor after notice and hearing.

Governor Fortuño appointed Díaz to the position of Disabilities Advocate on November 15, 2011.[2] There is nothing in the record to suggest that Díaz's performance was unsatisfactory in any way.

Defendant García was elected Governor in November 2012. In July 2013, Act 75 was enacted into law.[3] This Act -- which contained a lengthy preamble explaining why the Reorganization Plan was a failure -- repealed the Reorganization Plan. On the same day, Act 78 again established an Office of the Ombudsman for Persons with Disabilities of the Commonwealth of Puerto Rico. The Governor was given the power to appoint the Ombudsman to a ten-year term, removable upon notice and hearing for negligence in office.

---

[2]The statute gives the title as "Advocate for Persons With Disabilities." The parties use the term "advocate" and "ombudsman" interchangeably. We use the term found in the law applicable to the various time periods relevant to this case.

[3]Fortuño and García are members of opposing political parties. Much of Díaz's brief is focused on the political motives behind the various pieces of legislation at issue. We do not find these alleged motives germane to the issues before us.

Of note in Act 78 are Articles 19 and 20, which contain the following:

Article 19

From the entry into force of this Act, all documents, records, materials and equipment and the funds allocated to the Office of Ombudsman for Persons with Disabilities under Reorganization Plan No. 1-2011[4] shall be transferred to the Office of the Ombudsman of Persons with Disabilities of Puerto Rico, created under this Act. Similarly, any state or federal funds received by the Office from the agencies which are used for the services offered by this Office shall be reversed and shall be transferred to this Office through the accounts in the Department of Treasury and the OMB, as applicable.

Article 20

Human Capital, Delegation of Functions, and Retirement of Officers and Employees

(a) The employees of the Office of the Ombudsman for Persons with Disabilities created under Reorganization Plan No. 1-2011, shall be transferred to the Office of the Ombudsman for Persons with Disabilities, created under this Act.

(b) The human capital of the Office of the Ombudsman for Persons with Disabilities of Puerto Rico, created under this Act shall be under the application of Act No. 184-2004, as amended, known as the "Administration of Human Resources in the Public Service Act of the Commonwealth of Puerto Rico".

---

[4]Both Article 19 and Article 20 of Act 78 use the term "Ombudsman" for the position that the Reorganization Plan created with the title "Advocate." See also, supra note 2.

-4-

(c) Transferred employees shall retain all vested rights in accordance with the laws, rules, regulations and collective bargaining agreements applicable to them, as well as the privileges, obligations and status with respect to any existing pension, retirement or savings and loan fund system established by law, which were undertaken before the adoption of this law. Employees with regular status shall maintain that status.

. . . .

On August 28, 2013, Díaz was informed that, pursuant to Acts 75 and 78, an Acting Ombudsman for Persons with Disabilities had been appointed and that, pursuant to the same Acts, his position – Advocate – had been abolished. (The letter from the Governor referred to his position as "former Office of Ombudsman"). This suit followed.

## II. District Court Proceedings

On August 28, 2013, Díaz filed suit against Governor García and others. He sought declaratory, monetary and injunctive relief based on three causes of action: 1) political discrimination in violation of 42 U.S.C. § 1983; 2) lack of due process in terminating him from a job in which he held a property right; and 3) negligence under Puerto Rico Article 1802. At roughly the same time, Díaz filed an "Urgent Motion Seeking Temporary Restraining Order and Injunction." After a series of orders, the district court dismissed the claims for monetary damages. On September 26, the district court granted the

restraining order.[5]  The court did not reach the issue of whether the Legislature had abolished the plaintiff's job, and thus never reached defendants' central argument that the plaintiff was asking the court to interfere with the responsibility of the executive branch to execute validly enacted legislation.  Instead, citing Humphrey's Ex'r v. United States, 295 U.S. 602 (1935), and Morrison v. Olson, 487 U.S. 654 (1988), the district court framed the issue as a "removal of a political appointee," and found that because Díaz's position was "quasi-judicial," he could only be terminated for cause and after a hearing.

The defense -- responding to the district court's tack, but not abandoning its thesis that the position had been abolished -- relied principally on Gómez v. Negrón Fernández, 65 P.R.R. 286 (1945), which held that the Legislature has the virtually unfettered power to abolish a position with the holder of the "old" job not entitled to the new one.

In considering the request for an injunction, the district court was tasked with determining:  1) the movant's likelihood of success on the merits; 2) whether and to what extent the movant would suffer irreparable harm if the request were rejected; 3) the balance of hardships between the parties; and 4) any effect that the injunction or its denial would have on the

---

[5]The court issued an order that day and two subsequent amended orders.

-6-

public interest. Corporate Techs., Inc. v. Harnett, 731 F.3d 6, 9 (1st Cir. 2013). Despite expressing uncertainty as to the status of Puerto Rico law, the court ultimately found that Díaz had demonstrated a likelihood of success on the merits by showing that "in many ways his job functions are quasi-judicial," mostly akin to the power of administrative law judges to enforce disability laws and penalize violators. The court found irrevocable harm in the fact that, in the absence of an injunction, the plaintiff would be removed from his job. In balancing hardships, the court ruled that the defendants showed no reason why keeping Díaz in the job would be a hardship when compared to his removal. Finally, the court observed that maintaining the status quo was in the public interest. It also certified to the Puerto Rico Supreme Court the question of whether to classify Díaz's job as quasi-judicial or quasi-executive, explaining that it "harbors serious reservations about the state of Puerto Rico law."

## III.  Analysis

Our review of the district court's decision to grant the injunction is somewhat circumscribed. "'[W]e scrutinize abstract legal matters de novo, findings of fact for clear error, and judgment calls with considerable deference to the trier.'" Id. at 10 (quoting New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir. 2002)).  That said, our deference is not without limits.  For example, a material error of law ineluctably

constitutes an abuse of discretion.  Id.  We also will find an abuse of discretion if the district court ignores a material factor deserving significant weight, relies on an improper factor, or makes a serious mistake in weighing relevant factors.  Id.

Here, we find that the district court ignored a material factor deserving significant weight -- indeed the central thesis of appellant's argument.  That is, the plaintiff's position as Advocate for Persons with Disabilities was abolished in 2013 when Law 75 explicitly repealed Reorganization Plan 1 of 2011 and Law 78 created the Office of Ombudsman for Persons with Disabilities.  As such, we further find that the court erred in finding that Díaz had demonstrated a likelihood of success on the merits, the "sine qua non of th[e] four-part inquiry."  New Comm Wireless Servs., Inc.. 287 F.3d at 9.

Díaz does not argue that the Legislature lacked the power to abolish his Advocate position.  Instead, he disputes the existence of that historical fact.  Specifically, he claims that the legislative history does not evince an intent to eliminate Díaz's Advocate position and that Law 78 does not explicitly provide for his removal.[6]  While perhaps accurate, this argument misses the point.  Article 75, after providing numerous reasons for

_____

[6]Appellant's brief quotes the 2013 statutes as purportedly stating a goal  to "create once again the Office for the Ombudsman . . . ."  (emphasis ours).  We cannot locate the underlined language in either Law 75 or Law 78.

doing so, unambiguously repealed the very Reorganization Plan which created Díaz's job.  In so doing, the Legislature abolished the position of  Advocate.  See Lewis v. United States, 244 U.S. 134, 144 (1917) (holding that Congressional repeal of an act creating an office "had the effect to abolish it"); Brame v. United States, 10 Cl. Ct. 252, 255 (1986) (same) (citing Abt v. United States, 146 Ct. Cl. 205, 210 (1959)), aff'd, 818 F.2d 876 (Fed. Cir. 1987). Repeal is an act unquestionably within the ken of the Puerto Rico Legislature and thus is fatal to Díaz's legal position.  See Higginbotham v. Baton Rouge, 306 U.S. 535, 538 (1939) (holding that state legislature may "at pleasure create or abolish" public offices); see also Bastian v. Kennedy, 829 F.2d 1, 2 (1st Cir. 1987) (affirming state legislature "exercising its power to abolish nonconsitutional offices"); see also Gómez, 65 P.R.R. at 291-92 (same).

While the legislature's power is bounded by the state and federal constitutions, see Newton v. Mahoning Cnty. Comm'rs, 100 U.S. 548, 559 (1879), there is no viable claim here that the abolition of the Advocate Office independently violated some constitutional proscription.  Díaz asserts a retroactivity argument, citing Puerto Rico law for the proposition that later legislation cannot take away previously acquired rights.  But again, while that may an accurate statement of the law, it is misplaced here.  Díaz had no property interest, i.e., no "right,"

in the Advocate position.  See Gómez, 65 P.R.R. at 293 (noting that plaintiff had "no contractual right or property interest in accepting an office created by the Legislature").[7]  Moreover, even if he could identify a valid property interest created by Puerto Rico law, "the legislative process itself provide[d] [him] with all of the 'process' [he] was 'due.'"  Correa-Ruiz v. Fortuño, 573 F.3d 1, 14-15 (1st Cir. 2009) (quoting Gattis v. Gravett, 806 F.2d 778, 781 (8th Cir. 1986) (citing Atkins v. Parker, 472 U.S. 115, 131 (1985))).

Díaz's final argument fares no better.  In fact, it undermines his position.  He asserts that the fact that Article 20 of Law 78 contains "saving" provisions that transfer all Advocate Office personnel to the newly-created Ombudsman office (except Díaz) somehow establishes that his former position was not abolished.  We find the opposite to be true.  Pursuant to the statutory maxim  expressio unius est exclusio alterius, the Legislature's exclusion of the Advocate's position from the affirmative listing of those "saved" implies that Díaz's position was not saved.  See Sunshine Dev., Inc., v. F.D.I.C., 33 F.3d 106, 116-17 (1st Cir. 1994) (observing that under the same maxim, a

---

[7]Díaz's cited cases regarding property rights in government employment also miss the mark.  He cites no case that addresses a position, such as the Advocate, created and abolished by the legislature.  Meanwhile, Díaz makes no real effort to distinguish Gómez.  Instead he seeks to elide its clear holding by maintaining that Article 75 did not abolish his office, a position we have already rejected.

legislature's affirmative description of certain powers or exemptions implies denial of nondescribed powers or exemptions); see also Barnhart v. Peabody Coal Co., 537 U.S. 149, 168 (2003) (clarifying that maxim has force "only when the items expressed are members of an associated group or series, justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence" (internal quotation marks omitted)).  So it is here. By excluding Díaz from the "saved" list, the Legislature indicated its intent not to save him.[8]

### IV.  Conclusion

Ultimately, by claiming that it is unconstitutional for Puerto Rico to abolish the Advocate position without an individualized hearing, Díaz is asking the federal court to constrain the Puerto Rico Legislature's ability to restructure its workforce.  "Our Constitution, however, embodies no such federal constraint . . . ."  Mandel v. Allen, 81 F.3d 478, 482 (4th Cir. 1996).  "[I]n every perfect or competent government, there must exist a general power to enact and to repeal laws; and to create and change or discontinue, the agents designated for the execution

---

[8]Díaz has directed us to cases involving two other displaced Advocates in which the respective judges, one federal and one of the Commonwealth Court of First Instance, enjoined the government. See Montañez Allman v. García-Padilla, Civ. No. 13-1683(PG), 2013 WL 5719153 (D.P.R. Oct. 18, 2013) and Mellado López v. García-Padilla, Civ. No. K PE2013-4143, Certified Translation MC-2013-454 (First Instance Court, Oct. 30. 2013).  With due respect to the esteemed judges in both cases, we are neither bound nor persuaded by their reasoning.

of those laws." Butler v. Pennsylvania, 51 U.S. 402, 416-17 (1850). Accordingly, we **vacate** the injunction entered by the district court and **remand** this case for any further action not inconsistent with this decision.